THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MARY MUNOZ, Appellant.

First Department, July 6, 1960.

*Arnold E. Wallach* of counsel (*Max Fruchtman,* attorney), for appellant.

*Irving Anolik* of counsel (*Isidore Dollinger, District Attorney*), for respondent.

BASTOW, J. The principal question presented upon this appeal is whether the trial court erred in charging, pursuant to section

444 of the Code of Criminal Procedure, that defendant might be convicted of the crime of manslaughter, second degree, upon a finding by the jury that the homicide had been committed by defendant without a design to effect death by her "act, procurement or culpable negligence".

The defendant was indicted for the crime of manslaughter, first degree (Penal Law, § 1050, subd. 2) in that she caused the death of a pregnant female by administering a liquid solution of creosol and soap. There was undisputed medical testimony that such a fluid injected into the uterus would cause immediate death. The trial court of its own volition charged the jury that it might find the defendant guilty of manslaughter, second degree, if they were convinced beyond a reasonable doubt that the death was caused by defendant's act, procurement or culpable negligence. Timely exception was taken to this portion of the charge. The jury found the defendant guilty of the lesser crime.

Section 444 of the Code of Criminal Procedure permits the jury upon the trial of an indictment consisting of different degrees to find the defendant not guilty of the crime charged in the indictment and guilty of any degree inferior thereto. Section 445 permits a jury to find a defendant guilty of any crime "necessarily included" in the one charged in the indictment. "These two sections were not enacted with any purpose to introduce a new rule of criminal law, but were both declaratory of the rule which had always obtained at common law, which was that the prosecution never was allowed to fail because all the alleged facts and circumstances were not proved, if such as were proved made out a crime though of an inferior degree." (*People* v. *Miller*, 143 App. Div. 251, 253, affd. 202 N. Y. 618.)

In *People* v. *Mussenden* (308 N. Y. 558, 561–562) it was said: "It has been repeatedly written that if, upon any view of the facts, a defendant could properly be found guilty of a lesser degree or an included crime, the trial judge must submit such lower offense. * * * And it does not matter how strongly the evidence points to guilt of the crime charged in the indictment, or how unreasonable it would be, as a court may appraise the weight of the evidence, to acquit of that crime and convict of the less serious. * * * Consequently, although originally 'intended merely to prevent the prosecution from failing where some element of the crime charged was not made out' * * * the doctrine given expression in sections 444 and 445, redounds to the benefit of defendants as well, since its effect actually is to empower the jury 'to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence'."

The court then went on to enunciate the guiding principle (p. 563) "that the submission of a lesser degree or an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one." (See, also, *People* v. *Masselli,* 10 A D 2d 45.)

Section 1050 of the Penal Law, so far as here material, provides that homicide is manslaughter in the first degree when committed without a design to effect death by a "person who * * * administers to a woman, whether pregnant or not, * * * any medicine, drug or substance, * * * with intent thereby to procure the miscarriage of a woman * * * in case the death of the woman * * * is thereby produced". Section 1052, on the other hand, makes such homicide manslaughter in the second degree when committed without a design to effect death "By any act, procurement or culpable negligence of any person" which does not constitute homicide in a higher degree. The distinguishing feature between the two crimes thus becomes apparent. In the latter crime a finding of guilt might be made although the jury might not be convinced beyond a reasonable doubt that the substance was administered with intent to procure a miscarriage.

We, therefore, examine the evidence to discover if there was any basis therein for finding defendant innocent of the crime charged in the indictment but guilty of the lesser crime. Clearly there was. Briefly stated, there was proof that about 9:30 in the evening the deceased, accompanied by a friend, went to a doctor's office where defendant was employed. The deceased entered an examining room and was alone therein with defendant for 15 minutes when the latter opened the door and called in the companion of the deceased. The latter was then on the floor with her eyes closed and mouth open. She was transported to a hospital but was dead on arrival. A post-mortem examination revealed a large amount of creosol in the uterus fluid and an expert testified that such a corrosive material would result in immediate necrosis of the cell tissue, causing hemorrhage and ensuing shock, blood pooling in the abdomen and avoiding the heart with death resulting in from zero to ten minutes.

The defendant testified in her own behalf and denied that deceased told her that she (deceased) was pregnant or wanted an abortion. She said that on the evening in question deceased and her friend came to the office after the doctor had left; that deceased complained of not feeling well. Defendant asked her to come in the filing room — not the examining room — and to comfort her applied alcohol to the patient's neck, forehead and

back and gave her smelling salts. Suddenly deceased "keeled over" and defendant called the companion. Appellant categorically denied that she poured any creosol into a cannister or introduced any of the substance into the body of deceased or even gave her a douche. The People, however, called a detective, who testified that two days after the event appellant orally admitted to him that she administered a douche to deceased using a solution of water and creosol taken from a bottle of lysol. Defendant did not expressly admit at that time that this was done with intent to commit an abortion. Throughout her entire questioning, however, and also as a witness at the trial appellant steadfastly denied any attempt to abort the deceased.

Thus, as the case went to the jury it was entirely possible that the jury might find from the oral admissions made to the detective that defendant had administered merely a douche containing a deadly mixture but that the People had failed to prove that such act was done with intent to procure a miscarriage or to kill. Indeed, upon the expert testimony it might be difficult for any trier of the fact to make the latter finding. This is so because the corrosive material (creosol) injected into the body of the deceased was so deadly that it would not abort the patient but would kill her within 10 minutes. If defendant's view of the law had prevailed and only manslaughter in the first degree had been submitted, the jury might well have acquitted defendant. Therefore, the trial court quite properly submitted the lesser crime of manslaughter, second degree, for the jury to decide whether defendant's "act, procurement or culpable negligence" caused the death. All of this is consistent with the verdict of the jury finding defendant guilty of manslaughter, second degree. It may not be said that there was no basis in the evidence for finding defendant innocent of manslaughter, first degree, and yet guilty of manslaughter, second degree. (Cf. *People* v. *Heineman*, 211 N. Y. 475, 480; *People* v. *Drislane*, 8 N Y 2d 67.)

Defendant's reliance upon *People* v. *Huntington* (138 Cal. 261) is misplaced. That case was decided in 1903 and whatever validity it may have had at one time has disappeared in the light of subsequent decisions by California courts. The salient statement in the opinion (p. 264) is that "Instructions must be applicable to the facts and features of the case in hand." The court did hold it was error to charge the crime of manslaughter where the whole theory of the prosecution was that defendant was guilty of murder in causing the death of deceased by an attempt at criminal abortion. Huntington, however, was subsequently retried upon the same information and convicted of

manslaughter.   In affirming the judgment the court reviewed .
the law relating to the charging of lesser crimes and concluded
that " under a charge of murder by attempting to procure an
abortion, a verdict of manslaughter may be returned and will
be upheld." (*People* v. *Huntington,* 8 Cal. App. 612, 619.   See,
also, *Huntington* v. *Superior Ct.,* 5 Cal. App. 288.)   In subse-
quent decisions the holding in the first *Huntington* case has been
limited and questioned by California courts.   (Cf. *People* v.
*Mount,* 93 Cal. App. 81, 87–88; *People* v. *Wolcott,* 137 Cal. App.
355, 363.)   Finally, in *People* v. *Long* (15 Cal. 2d 590) the court
again revisited the three *Huntington* decisions.   The Supreme
Court of California adopted the following language from the
decision of the District Court of Appeals (p. 602) : " Whatever
may be the rule in cases where the defendant is tried solely on
the theory that death resulted from an illegal abortion, and no
evidence is offered of lack of due caution and circumspection,
there can be no doubt that where the main theory of the prosecu-
tion is that death resulted from an illegal abortion, but some
substantial evidence of want of due caution and circumspection
is offered and received, an instruction on manslaughter may
properly be given."   This, of course, is in accord with the rule
in this State that submission of the lesser degree is justified
where there is basis in the evidence for a finding of innocence
of the higher degree but yet guilt of the lower one.   There was
no error in submitting to the jury the lesser degree of man-
slaughter, second degree, and the finding of guilt thereof is
amply sustained by the evidence.

We find no substance to the other errors assigned by defend-
ant.   It is true that the trial court did not define the word
" culpable " as used in section 1052 of the Penal Law.   But the
defendant made no request that the subject be enlarged upon
or further elucidated for the benefit of the jury.   " If a charge
lacks clearness in any respect, it is the duty of counsel to remove
the doubt by a request for further instructions and if he fails
to get them an exception will protect the rights of his client."
(*People* v. *Johnson,* 185 N. Y. 219, 232.)   *People* v. *Angelo* (246
N. Y. 451) relied on by defendant is distinguishable.   There the
trial court refused to charge that slight negligence was not
culpable but left it to the jury to say whether it was or was not.
Here we have no gradations of slight, ordinary or culpable negli-
gence.   If under the court's charge the jury found that defend-
ant injected into the body of deceased a corrosive material that
would cause almost instantaneous death the negligence was
reckless or gross — negligence worthy of punishment.   It can

hardly be contended that such an act would be slight or ordinary negligence. It may be surmised that at the time defendant was content to let the matter rest without requesting further discussion of the subject by the trial court.

We agree that in a case of this kind, the trial court in the exercise of a proper discretion should have granted defendant an inspection of the autopsy findings. The failure to do so, however, was not so prejudicial as to require a new trial. On this phase of the appeal we affirm pursuant to the mandate of section 542 of the Code of Criminal Procedure.

The judgment of conviction should be affirmed.

McNALLY, J. (dissenting). Defendant has been convicted of the crime of manslaughter, second degree. The indictment charged manslaughter, first degree, in the language of subdivision 2 of section 1050 of the Penal Law: "A person who provides, supplies, or administers to a woman, whether pregnant or not, or who prescribes for, or advises or procures a woman to take any medicine, drug, or substance, or who uses or employs, or causes to be used or employed, any instrument or other means, with intent thereby to procure the miscarriage of a woman, unless the same is necessary to preserve her life, in case the death of the woman, or of any quick child of which she is pregnant, is thereby produced, is guilty of manslaughter in the first degree."

The evidence establishes beyond a reasonable doubt the contention of the People in their opening and summation that the defendant, in order to abort Maria Soto who was pregnant for six months, injected a solution of creosol and soap into her uterus causing her immediate death. Defendant offered evidence that the decedent, accompanied by a friend, attended the office of a doctor where defendant was employed and requested aid and assistance because of a complaint by the decedent that she was dizzy and did not feel well; that defendant, in the absence of her employer, ministered to decedent by instructing her to bring her head below her knees, applying alcohol to the back of her neck and forehead and furnishing smelling salts; and that despite the aid and assistance rendered by the defendant the decedent fainted and thereafter never regained consciousness. The defense, if accepted by the jury, entitled the defendant to a verdict of acquittal.

However, upon request of the prosecution and over the objections of the defendant, the court submitted to the jury for consideration not only the crime of manslaughter, first degree, but, in addition, and as an alternative, the lesser crime of man-

slaughter, second degree. (Penal Law, § 1052, subd. 3.) This was done without any statement as to the circumstances that might warrant or permit them to consider this lesser degree of crime or any definition of the element of culpable negligence and what would be required by way of proof to establish it.

A persuasive and well-reasoned opinion in a sister State is in point. (*People* v. *Huntington,* 138 Cal. 261, 263–265.) "The only position taken by the prosecution was, that appellant had caused death while committing a felony, — to wit, producing an abortion, — and was therefore guilty of murder; there was no pretense that he was guilty of any crime less than murder. But after the evidence had been closed and the case had been argued to the jury upon the theory of murder by abortion, as above stated, the court, at the last moment, of its own motion, instructed the jury that appellant might be convicted of man-slaughter upon a totally different theory, — to wit, that death did not result from an attempt to produce abortion, or to commit any other crime or unlawful act whatever, but that it resulted while he was doing a perfectly lawful act, — that is, treating the deceased medically for a disease, — upon the ground that said lawful act was done ' without due caution or circumspec-tion.' Of course, the general proposition is true that there may be a conviction of manslaughter under an indictment for murder; but that proposition does not justify any kind of a charge which a court may give upon that subject, regardless of the character and theory of the prosecution in a criminal case; instructions must be applicable to the facts and features of the case in hand. Under the circumstances of the case at bar there should have been no instruction on the subject of manslaughter; the only question legitimately before the jury was whether appellant had caused death while attempting to produce abor-tion. If that was the fact, he was guilty of a murder; and there was no element of manslaughter present. But the jury, under the instruction, found him guilty of manslaughter; and he was therefore tried for one crime and convicted of an entirely dif-ferent crime. Moreover, when the court, of its own motion, interjected into the case the notion that the defendant could be convicted of a crime for which nobody supposed he was being tried, it certainly should have stated the law as to this new view of the case. To convict a physician of a felony for alleged want of proper treatment of a patient who dies is a most serious thing; and convictions of that character are exceedingly rare in judicial history. If we assume that the court had any warrant to touch the subject at all, it certainly should have told the jury

that in such cases the law exacts only ordinary and reasonable care and skill on the part of the physician. And the error in not stating the law, upon a subject to which no reference had been made by counsel on either side, and about which clearly no one connected with the case expected any instruction, is not condoned by the fact that counsel for appellant, in the confusion which the unexpected instruction evidently produced, did not ask for further instruction on an issue which they did not consider to be in the case."

We disagree with the analysis of the California cases discussed in the majority opinion. The rationale of *People* v. *Huntington* (*supra*) is unimpaired by the subsequent decisions of the California courts cited by the majority. They are to be read in the light of the legal effect under California law of the prior adjudication. On the retrial of an indictment resulting in a conviction for a lesser degree of the crime charged, the California courts hold that the prior verdict and judgment preclude a prosecution for the offense as originally charged and limits the retrial to the lesser degree of the offense. The law of New York is otherwise. "The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew; and the former verdict cannot be used or referred to, either in evidence or in argument." (Code Crim. Pro., § 464.)

In no aspect of the case is the verdict of guilt in respect of manslaughter, second degree, supported by this record. The undisputed evidence is that decedent's death was caused by the injection into her uterus of a solution of creosol and soap for the purpose of aborting her; the defendant denied responsibility therefor.

The instruction on the lesser degree of the offense charged introduced an entirely new issue, unsupported by any proof and to which the defendant and the respondent had not addressed themselves in the proof or on summation. The evidence of the prosecution, if credited by the jury, warranted a verdict of guilt as to the crime charged in the indictment; it does not support a finding of the absence of the intention on the part of the defendant to procure the miscarriage of the decedent.

No possible view of the facts justifies any other verdict except a conviction of the crime as charged or an acquittal. (*People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Moran,* 246 N. Y. 100, 105; *People* v. *Mussenden,* 308 N. Y. 558, 563; *People* v. *Masselli,* 10 A D 2d 45.) It was error, therefore, over defendant's objection, to submit to the jury for its consideration the charge of man-

slaughter, second degree, and thereby enable the jury to pass on a charge not made in the indictment and without evidence to support it.

In any event, we think it was incumbent on the trial court when it assumed to charge manslaughter, second degree, over objection by defendant, to define the crime and explain culpable negligence. " 'Culpable' negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others." (*People* v. *Angelo,* 246 N. Y. 451, 457.)

It is suggested that the court's failure to define culpable negligence is without substance because the finding of gross or reckless negligence is implicit in the jury's finding that the defendant injected into the body of the decedent a corrosive material. Nevertheless, it was for the jury to pass on the culpable negligence of the defendant no matter what the circumstances. In order to do so, the court should have supplied the jury with the standard by which culpable negligence is to be determined. This the court failed to do.

We are of the opinion, in the circumstances of this case, particularly because the court assumed to charge the lesser degree of manslaughter over defendant's objection, that, despite the absence of a request therefor, it was necessary and incumbent on the court to define culpable negligence. (See *People* v. *Drislane,* 8 N Y 2d 67 [decided May 26, 1960].)

Moreover, it was an unwise exercise of discretion by the learned Trial Judge to deny defendant an inspection of the autopsy findings resulting from the death of the decedent herein and received in evidence. The report of the findings of the Medical Examiner was material and admissible. (*People* v. *Nisonoff,* 293 N. Y. 597.)

Section 879 of the New York City Charter provides: " It shall be the duty of the chief medical examiner to keep full and complete records in such form as may be provided by law. The chief medical examiner shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality, and such records shall not be open to public inspection."

The interdiction of public inspection of death records involving criminality does not affect the right of this defendant, whose interest therein is personal and immediate and patently apart from and other than that of the public, to an inspection of the official findings of the Medical Examiner pertaining to the death

resulting from the criminal act charged against her. In the absence of a showing of prejudice to the People, the defendant should have been afforded the opportunity to inspect the findings of the Medical Examiner. (See *People* v. *Preston,* 13 Misc 2d 802, 815–817, writ of prohibition denied *sub nom. Matter of Silver* v. *Sobel,* 7 A D 2d 728.)

The judgment should be reversed and a new trial directed.

BREITEL, J. P., and STEVENS, J., concur with BASTOW, J.; McNALLY, J., dissents and votes to reverse and grant a new trial, in opinion, in which VALENTE, J., concurs.

Judgment of conviction affirmed.