THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICK S. UDZINSKI, Appellant.

Second Department, April 17, 1989

APPEARANCES OF COUNSEL

*John F. Middlemiss, Jr. (Anna M. Perry* of counsel), for appellant, and appellant *pro se.*

*Patrick Henry, District Attorney (Arthur P. Scheuermann* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J.

The principal question in this case is whether an error in a jury charge, which the defendant claims constituted a violation of his constitutional right to be tried only upon

theories charged in the indictment, is reviewable as a matter of law in the absence of a timely objection. We hold that it is not, and affirm the conviction.

"A person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact * * * [b]y forcible compulsion" (Penal Law § 130.65 [1]). The meaning of the term "forcible compulsion" embraces both the concept of actual force and the concept of the threat of force (Penal Law § 130.00 [8] [a], [b]). However, when an indictment specifies that an accused committed sodomy in the first degree through the use of *actual* force alone, it is error for the Trial Judge to instruct the jury, over objection, that the crime may also be committed by the use of the *threat* of force *(People v Kaminski,* 58 NY2d 886; *see also, People v Grega,* 132 AD2d 749, *mod* 72 NY2d 489; *People v Charles,* 61 NY2d 321, 329).

The defendant in this case argues that a new trial is necessary as to that count of the indictment which charged him with sexual abuse in the first degree, because by allowing the jury to convict him of this charge based upon a finding that the crime was accomplished by the use of the *threat* of force, where the indictment specifies that *actual* force was used, the Trial Judge, in effect, altered the theory of the prosecution.

Assuming that the holding of the *Kaminski* case *(supra)* lends validity to this argument, we find that modification of the judgment on this ground would nonetheless be unwarranted, because any error in this regard was not properly preserved for appellate review as a matter of law and would, in any event, be harmless.

I

It is conceded that defense counsel did not object or except to the Trial Judge's definition of the term "forcible compulsion" in its jury charge. Citing *People v McLucas* (15 NY2d 167), *People v Grega* (132 AD2d 749, *mod* 72 NY2d 489, *supra),* *People v Rubin* (101 AD2d 71, 77), and *People v Gray* (71 AD2d 295), the defendant argues that a question of law is nonetheless presented, since "no objection is necessary to preserve a deprivation of a fundamental constitutional right". The defendant contends that the alleged *Kaminski* error in this case deprived him of a constitutional right to be tried only upon theories presented in the indictment *(see,* NY Const, art I, § 6; *see also, People v Charles,* 61 NY2d 321, 329, *supra),* so that

such error must be considered reviewable as a matter of law. This court has recently held, in a case decided after the argument of this appeal, that such an error is not reviewable as a matter of law in the absence of an objection *(see, People v Prato,* 143 AD2d 205, 206). Recognizing that this aspect of the *Prato* case *(supra)* apparently conflicts with the holding of the Fourth Department in *People v Rubin (supra),* we believe that a more extended discussion of our rationale is warranted.

## A

■ Before proceeding to address this contention, it will be helpful to recall the rationale underlying the doctrine of preservation, as codified in CPL 470.05 (2). This doctrine precludes appellate review, as a matter of law, of any ruling made by the court of original instance unless a protest was made to the ruling "at any * * * time when the court had an opportunity of effectively changing the same" (CPL 470.05 [2]). By limiting a litigant's right to have a particular error corrected on appeal where no protest was voiced at the time the error was committed, the doctrine of preservation encourages all parties to be vigilant in the protection of their substantive and procedural rights throughout the course of a litigation. "Abandonment of the [preservation doctrine] actually increases [the prospect of] trial error. Absent the finality rule, judges, prosecutors, and defense counsel need not carefully watch for errors during trial because errors can be corrected on appeal though not preserved for review" (29 De Paul L Rev 753, 760, quoted in *People v Jones,* 81 AD2d 22, 30).

The Supreme Court of the United States has repeatedly emphasized that appellate review of claims of error which were not properly raised in the court of original instance *(see,* Fed Rules Crim Pro, rule 52 [b]) provides the accused with an " 'extravagant protection' " to be exercised only in exceptional cases *(see, United States v Young,* 470 US 1, 16; *Henderson v Kibbe,* 431 US 145, 154; *Namet v United States,* 373 US 179, 190). The refusal to afford appellate review of arguments raised for the first time in the appellate court "encourage[s] all trial participants to seek a fair and accurate trial the first time around" *(United States v Frady,* 456 US 152, 163).

At trial, "the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place

in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification" *(Wainwright v Sykes,* 433 US 72, 90). The doctrine of preservation, therefore, should not be viewed as a pretext by which appellate courts may overlook those errors which are inevitable at any trial *(People v Kingston,* 8 NY2d 384, 387), but instead should be regarded as an indispensable means of avoiding such errors in the first instance.

The preservation doctrine applies, in general, to all but an extremely narrow class of error. While it is possible to derive from prior decisional law sweeping statements such as "no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right" *(People v McLucas,* 15 NY2d 167, 172, *supra; see also, People v Gray,* 71 AD2d 295, 297, *supra),* it is now clear that such obiter dictum no longer reflects sound law. In *People v Thomas* (50 NY2d 467, 473), for example, the Court of Appeals stated that "the rule requiring a defendant to preserve his points for appellate review applies generally to claims of error involving Federal constitutional rights".

The preservation doctrine has been applied so as to preclude appellate review of a wide variety of arguments relating to errors which clearly affected fundamental rights *(see, e.g., People v Fernandez,* 72 NY2d 827; *People v Russell,* 71 NY2d 1016; *People v Fleming,* 70 NY2d 947 [right to confront adverse witnesses]; *People v Ruz,* 70 NY2d 942 [ex post facto punishment]; *People v Iannelli,* 69 NY2d 684; *People v Dozier,* 52 NY2d 781, 783 [unconstitutionality of criminal statute, due process]; *People v Benedict,* 68 NY2d 832 [due process right to fair trial]; *People v Thomas, supra [Sandstrom* error]; *People v Miguel,* 53 NY2d 920, 922 *[Dunaway* error]; *People v Cedeno,* 52 NY2d 847, 848 [due process violation based on delay in prosecution]; *People v Martin,* 50 NY2d 1029 *[Payton* error]; *People v Booker,* 49 NY2d 989; *People v Tutt,* 38 NY2d 1011 *[Miranda* error]; *People v Lieberman,* 47 NY2d 931 [violation of constitutional right to speedy trial]). As a matter of Federal constitutional law, State appellate courts may properly decline to review claims of Federal constitutional error on the basis that such claims were not raised in a procedurally correct manner *(see, e.g., Wainwright v Sykes,* 433 US 72, 87, *supra* [Florida procedure, consistent with Federal Constitution, re-

quired *Miranda* claim to be raised at trial or not at all]; *Engle v Isaac,* 456 US 107, 124-129 [defendant's failure to except to jury instruction which unconstitutionally shifted burden of proof on defense of justification constituted valid basis for State appellate court's refusal to entertain argument]). A defendant in a State criminal prosecution who forfeits his right to State appellate review of a constitutional argument because of a procedural default on his part may not avoid the consequences of such forfeiture by resorting to an application for a writ of habeas corpus in the Federal courts, and it is now settled that Federal habeas corpus review of a question of constitutional law which was resolved against the defendant in the State courts on procedural grounds generally is not permitted *(see, Wainwright v Sykes, supra; Engle v Isaac, supra; Kuhlmann v Wilson,* 477 US 436).\*

The preservation doctrine has been extended so far as to preclude appellate review, as a matter of law, of what could convincingly be said to be the most fundamental of all possible defects in a criminal proceeding, that is, the failure of the People to adduce legally sufficient evidence of the crime of which the defendant is convicted *(see, People v Colavito,* 70 NY2d 996; *People v Bynum,* 70 NY2d 858; *People v Kennedy,* 68 NY2d 569, 582; *People v Gomez,* 67 NY2d 843, 845; *People v Stahl,* 53 NY2d 1048, 1050). In *Colavito, Bynum* and the other cases cited above, it was held that a defendant may not raise, for the first time on appeal, arguments concerning the legal sufficiency of the prosecution's evidence; such arguments could be advanced only if they had been raised with specificity in the trial court. The Appellate Division, of course, may entertain such arguments in the interest of justice (CPL 470.15 [6] [a]), as may the Federal appellate courts pursuant to the "plain error" rule (Fed Rules Crim Pro, rule 52 [b]; *see, e.g., United States v Watts,* 502 F2d 726, 727; *United States v Wright-Barker,* 784 F2d 161, 170-171; *United States v Curtis,* 568 F2d 643, 647; *United States v Jackson,* 824 F2d 21, 26).

---

\* In general, constitutional claims which are forfeited in a State criminal prosecution may be raised in a later Federal habeas corpus proceeding only if there was good cause for the default, that is, "some objective factor external to the defense [which] impeded counsel's effort to comply with the State's procedural rule", as well as actual prejudice *(Murray v Carrier,* 477 US 478, 488; *see also, Dugger v Adams,* 489 US —, 103 L Ed 2d 435, 57 USLW 4276; *Harris v Reed,* 489 US —, 103 L Ed 2d 308; *Amadeo v Zant,* 486 US —, 100 L Ed 2d 249; *United States v Frady,* 456 US 152, 167; *Wainwright v Sykes,* 433 US 72).

Similarly, by failing to assert the appropriate objection at trial, a defendant may forfeit his right to argue on appeal that the Trial Judge's instructions to the jury did not properly define the elements of the crime (see, *People v Dekle,* 56 NY2d 835, 837; *People v Holzer,* 52 NY2d 947, 948; *People v Maille,* 136 AD2d 829, 830; *People v Griffith,* 80 AD2d 590, 591; *see also, People v Malagon,* 50 NY2d 954, 956; *People v Bell,* 48 NY2d 913). Thus, if the Trial Judge in this case had entirely failed to define the term "forcible compulsion", the error would not have been reviewable as a matter of law in the absence of an appropriate objection. However, such an error would be reviewable in this court as an aspect of our interest of justice jurisdiction, and such an error in the Federal courts may also be considered so fundamental as to be properly reviewable as a matter of discretion (Fed Rules Crim Pro, rule 52 [b]; *see also, United States v Byrd,* 352 F2d 570; *United States v Williams,* 463 F2d 958; *cf., United States v Crockett,* 506 F2d 759, 762; *United States v Stewart,* 779 F2d 538).

Considering the scope and number of the truly fundamental errors to which the preservation doctrine does apply, one encounters difficulty in deriving from precedent a rigid standard by which to ascertain those errors to which the doctrine does not apply (see, e.g., *People v Michael,* 48 NY2d 1 [double jeopardy]; *People v Samuels,* 49 NY2d 218 [State constitutional right to counsel]). In *People v Patterson* (39 NY2d 288, 295, affd 432 US 197), the Court of Appeals stated that errors which " 'would affect the organization of the court or the mode of proceedings prescribed by law' " are reviewable as a matter of law even in the absence of an objection. This formulation was repeated in *People v Ahmed* (66 NY2d 307, 310; *see also, People v Rivera,* 73 NY2d 941). In *People ex rel. Battista v Christian* (249 NY 314, 318), appellate review of errors of law, in the absence of an objection, was held to be permitted "where a question of jurisdiction or fundamental rights is involved *and public injury would result*" (emphasis supplied).

The rule that certain fundamental irregularities in a criminal prosecution may not be waived or even consented to by the defendant derives from the concept that neither the defendant nor the prosecutor nor the court has the right to deprive the public of its interest in preserving the basic fairness of our judicial system. "The state, the public, have an interest in the preservation of * * * liberties" *(Cancemi v*

*People,* 18 NY 128, 137). While the defendant, by consent, may alter the substantive and procedural rules by which a criminal case is prosecuted, this power does not "extend so far as to work radical changes in great and leading provisions as to the organization of the tribunals or the mode of proceeding prescribed by the constitution and the laws" *(Cancemi v People, supra,* at 137). Thus, the most basic components of a fair trial —a fair Judge, a fair jury, and a court of competent jurisdiction—are generally held to be so important that the defendant cannot, through application of the preservation doctrine on appeal, forfeit his right to object to their absence *(see, People v Ahmed, supra; People v Parisi,* 276 NY 97 [absence of Trial Judge]; *Cancemi v People,* 18 NY 128, *supra* [jury of less than 12]; *People v Schmidt,* 216 NY 324, 342-343). In holding such fundamental irregularities to be reviewable even in the absence of an objection, it is the interest of society at large, and not the personal interest of the defendant, which the courts protect *(see, People v Iannone,* 45 NY2d 589, 593).

The unpreserved error allegedly present in the Trial Judge's charge in the present case, far from working a radical change "in great and leading provisions as to * * * the mode of proceeding prescribed by the constitution and the laws" *(Cancemi v People, supra,* at 137), constituted, at worst, an instruction which conveyed to the jury the *correct* definition of the elements of the crime with which the defendant was charged, in an instance where the indictment against the defendant purportedly led him to believe that the People would limit their "theory" so as to, in effect, narrow the definition of the crime. While we recognize the fundamental place that a properly drawn indictment has in our criminal justice system, we cannot consider the error in this case to be jurisdictional, or otherwise fundamental.

## B

The defendant's basic argument with respect to the issue of preservation proceeds as follows. First, he contends that *People v Kaminski* (58 NY2d 886, *supra)* held, in effect, that the crime of sexual abuse in the first degree, accomplished by *actual* force, is, in the sense of criminal elements, distinct from the crime of sexual abuse in the first degree, accomplished by the *threat* of force *(see also, People v Grega,* 132 AD2d 749, *mod* 72 NY2d 489, *supra).* Second, the defendant asserts that his right to be tried for only those crimes of

which he stands accused in the indictment is a nonwaivable one and one which is not subject to forfeiture. The defendant concludes, therefore, that his failure to make a contemporaneous objection does not constitute on appeal a forfeiture of his right to argue that the Trial Judge by its charge permitted the jury to impose criminal liability on him for a crime which was not charged in the indictment.

■ It will be helpful, for the sake of clarity, to approach the preservation issue upon the assumption that the defendant's argument on the merits is correct. We may assume, then, that under the logic of the *Kaminski* and *Grega* cases *(supra)*, the crime of sexual abuse in the first degree based on actual force is different from the crime of sexual abuse in the first degree based on the threat of force, as though those two offenses were defined in separate provisions of the Penal Law. The question then becomes whether it is always a nonwaivable jurisdictional error for the Trial Judge to instruct the jury in a criminal case that it may find the defendant guilty of an offense not charged in the indictment. We answer this question in the negative.

Prior to January 1, 1974, the New York State Constitution provided, without exception, that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury" (NY Const, art I, former § 6; *People ex rel. Battista v Christian,* 249 NY 314, 317, *supra)*. In the *Battista* case *(supra)*, it was held that a criminal defendant's right to be tried only upon an indictment was so fundamental as to be beyond his power to waive, even though the Legislature had enacted a statute which specifically authorized such a waiver *(see also, Matter of Simonson v Cahn,* 27 NY2d 1). In response to the *Simonson* decision *(supra)*, the State Constitution was amended, effective January 1, 1974, so as to permit a defendant, under defined circumstances, to waive his right to an indictment *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 195.10, at 380).

Pursuant to the rule of nonwaivability announced in the *Battista* case, in *People v Miles* (289 NY 360) it was determined that it was beyond the power of a defendant to consent to the submission to'the jury of a charge not contained in the indictment, where the charge related to a transaction which was not the subject of the indictment. The defendant argues that the rule to be educed from the *Miles* case *(supra)* is that it is *always* a nonwaivable error for the Trial Judge to allow

the jury to impose criminal liability for any crime not charged in the indictment. However, in light of more recent case law, it is clear that this reading of the *Miles* case is overly broad.

First of all, it has always been regarded as proper for the Trial Judge to submit to the jury crimes now defined as "lesser included offenses" *(see,* CPL 1.20 [37]; 300.50) even though such offenses may not have been specifically charged in the indictment. The current provisions of the Criminal Procedure Law and the sections of the Code of Criminal Procedure from which they are derived, reflect the common-law rule which allowed a jury "to find a defendant guilty of any crime 'necessarily included' in the one charged in the indictment" *(People v Munoz,* 11 AD2d 79, 81, quoting former Code Crim Pro § 445; *see also, People v Miller,* 143 App Div 251, 253, *affd* 202 NY 618). In theory, an indictment which charges a particular offense also charges all lesser crimes necessarily included in that offense. "In all these cases, the indictment includes a true description of the act done, and all the circumstances defining the minor offence, and it adds to these the further circumstance, which, if proved, would raise the offence to the higher grade" *(Dedieu v People,* 22 NY 178, 184). It is clear that any Grand Jury which has voted to indict a defendant for a particular offense necessarily has found sufficient proof to believe that such defendant also committed every lesser offense necessarily included therein. Thus, the right to a trial upon an indictment of a Grand Jury is not subverted by allowing the submission of lesser included offenses.

Furthermore, more recently it has been held that jurisdictional error does not occur, even when a Trial Judge submits to the jury a crime which is neither itself contained in the indictment, nor one necessarily included within any charge contained in the indictment as a lesser included offense *(see, People v Ford,* 62 NY2d 275).

In the *Ford* case *(supra),* the Court of Appeals held, in the three separate cases under review, that the defendants in question had forfeited their right to appellate review of the errors which resulted from (1) the submission of grand larceny in the third degree (Penal Law former § 155.30) where the indictment charged only robbery in the first and second degrees (Penal Law §§ 160.15, 160.10), (2) the submission of assault in the second degree (Penal Law § 120.05) where the indictment charged only manslaughter in the second degree (Penal Law § 125.15), and (3) the submission of the crimes of

assault in the third degree (Penal Law § 120.00) and grand larceny in the third degree (Penal Law former § 155.30), where the indictment charged only robbery in the second degree (Penal Law § 160.10) *(People v Ford, supra,* at 279-280). In light of the holding of the Court of Appeals in *Ford,* the defendant's reliance on *People v Miles* (289 NY 360, *supra)* for the proposition that it is always jurisdictional error for the Trial Judge to submit to the jury charges which were not contained in the indictment is clearly misplaced.

In summary, *People v Ford (supra)* determined that a defendant may, by failing to make a timely objection, forfeit his right to appellate review of a claim that the Trial Judge erroneously allowed criminal liability to be imposed for a crime which not only was not charged in the indictment, but which also might never have been considered by the Grand Jury. In so doing, several prior decisions of this court in which it had been held that review of such a claim of error could not be forfeited were overruled *(see, People v Sutton,* 99 AD2d 361, *vacated on rearg* 104 AD2d 1057; *People ex rel. Gray v Tekben,* 86 AD2d 176, *affd* 57 NY2d 651; *People v Moy,* 56 AD2d 853, 854; *People v Santana,* 42 AD2d 869). The decision in the *Ford* case, however, was not unprecedented, for *People v Stevenson* (31 NY2d 108, 109, n 1) held that the defendant's failure to object to the submission of a crime which was not charged in the indictment and which was not a lesser included offense precluded appellate review as a matter of law of that issue. Similarly, in a habeas corpus proceeding it had been held that such an error was not so fundamental as to be properly reviewable, in the absence of an objection *(see, People ex rel. Wachowicz v Martin,* 293 NY 361; *People ex rel. Tanner v Vincent,* 44 AD2d 170, *affd* 36 NY2d 773).

The rule of *People v Ford (supra)* is not inconsistent with that of *People v Miles (supra).* In *Miles (supra,* at 363), it was emphasized that the additional charge which was submitted by the court to the jury did not "relate to the transactions upon which the defendant stood indicted". In other words, the Trial Judge in *Miles (supra),* not only allowed guilt to be fastened on the defendant for a crime with which he was not charged, but also allowed guilt to be based upon the defendant's participation in a transaction to which the indictment did not refer. In the *Ford* case, on the other hand, it was emphasized that "error[s] by the trial court in submitting or considering a lesser crime arising out of the same transaction" were being considered *(People v Ford,* 62 NY2d 275, 282-283,

*supra).* In short, *Ford* dealt with the submission of uncharged crimes which arose out of the same transaction as that to which the indictment referred, while in *Miles,* the court dealt with the submission of uncharged crimes relating to an entirely different transaction. It is clear that the holding of *Ford,* rather than that of *Miles,* would apply to the case at bar and that any *Kaminski* error *(see, People v Kaminski,* 58 NY2d 886, *supra)* which may have occurred was not jurisdictional *(cf., People v Crutchfield,* 111 AD2d 346 [issue reached in interest of justice]).

It may well be argued that the rule of the *Ford* case *(supra)* goes only so far as to preclude appellate review as a matter of law, in the absence of an objection, of the submission of noninclusory concurrent counts *(see,* CPL 300.30 [4]) which are of a lesser degree or grade than the crime charged in the indictment. It may be argued, for example, that while a defendant may forfeit his right to object to the submission of grand larceny in the third degree (Penal Law former § 155.30) where he is charged with robbery in the second degree (Penal Law § 160.10), it would be a nonwaivable jurisdictional defect for the court, conversely, to allow a defendant to be found guilty of robbery in the second degree, where the indictment charged him only with grand larceny in the third degree. In the present case, the Trial Judge defined the crime of sexual abuse in the first degree so as to include sexual abuse based on threats of force, and even assuming, arguendo, that the latter is a different crime than sexual abuse in the first degree based on actual force (even though the two crimes are defined in the same paragraph of the Penal Law and could thus be charged in one single count *[see,* CPL 220.20 (1)]), it would certainly not be one of a higher grade. Under these particular circumstances, we believe the forfeiture rule of the *Ford* case applies and we conclude that it was not jurisdictional error for the Trial Judge to instruct the jury as he did.

## C

As was discussed above, the first reason for considering an indictment as a jurisdictional predicate to any felony prosecution derives from the State constitutional right to be held for trial only after a finding of probable cause by a Grand Jury (NY Const, art I, § 6; *see, People v Charles,* 61 NY2d 321, 326-327, *supra; People v Spann,* 56 NY2d 469, 472-473; *People v Iannone,* 45 NY2d 589, 594-595, *supra; see also, People v*

*McDermott,* 69 NY2d 889). A second reason for considering a valid accusatory instrument as a jurisdictional necessity derives from the separate constitutional mandate which requires that the accused receive "fair notice of the accusations made against him to enable him to prepare a defense" *(People v Charles, supra,* at 326-327; *see also, People v Banville,* 134 AD2d 116, 119). Our State Constitution provides that "[i]n any trial in any court whatever the party accused * * * shall be informed of the nature and cause of the accusation" (NY Const, art I, § 6). Also, CPL 200.50 (7) (a) requires that every count of an indictment contain a "plain and concise factual statement * * * which * * * asserts facts supporting every element of the offense charged".

Pursuant to CPL 200.70 (2), "[a]n indictment may not be amended in any respect which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it". Amendments are permitted as to "matters of form, time, place, names of persons and the like" (CPL 200.70 [1]). However, as we have previously noted, the standard by which reviewing courts are to decide at what point an amendment with respect to a matter "of form * * * and the like" amounts to a change in the "theory" of the prosecution is not altogether clear.

■ The sexual abuse count contained in the present indictment in its factual portion, charges that "[t]he defendant, on or about March 29, 1986, in Suffolk County, subjected [the victim] to sexual contact by means of forcible compulsion, by grabbing her breasts and beating her about the body". This statement specifies all the elements of the crime and otherwise complies with the requirements of CPL 200.50 and furnishes the jurisdictional predicate for the defendant's conviction of that crime. This count of the indictment includes the statutorily required "plain and concise factual statement * * * which * * * asserts facts supporting every element of the offense charged" (CPL 200.50 [7] [a]). It informs the accused of the intimate part of the victim's body with which he was accused of having made contact, and it informs him, in general, of what type of "forcible compulsion" he was accused of having employed. Thus, it is clear that the present indictment afforded the defendant "fair notice of the accusations made against him" *(People v Charles, supra,* at 326; *see also, People v Ray,* 71 NY2d 849; *People v Wright,* 112 AD2d 38, 39 [Callahan, J., dissenting], *revd* 67 NY2d 749 *on dissenting opn of Justice Callahan at App Div).* The alleged variance between

the terms of this count of the indictment and the terms of the charge later delivered by the Trial Judge is so slight as to render inconceivable the idea that the defendant might have been deprived of fair notice of the theory that the prosecution would pursue as that theory was ultimately reflected in the jury charge.

With respect to the preservation issue, it is critical to note that even the complete failure of an indictment to contain factual recitations "with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation" (CPL 200.50 [7] [a]), as opposed to the failure of an indictment to include all the elements of a crime, has been held to be the type of error, the review of which *is* subject to forfeiture on preservation grounds *(see, People v Soto,* 44 NY2d 683, 684; *People v Byrdsong,* 133 AD2d 164, 165; *People v Di Noia,* 105 AD2d 799). In *People v Iannone* (45 NY2d 589, 599-600, *supra),* for example, the Court of Appeals, after noting that the defendant's right to be informed of the basis of the charges against him was "basic and fundamental", held that a deprivation of that right was not reviewable as a matter of law where no motion to dismiss the indictment had been made.

The rationale for this rule is apparent. If the allegations of an indictment are in fact insufficient to permit the defendant to prepare for trial, that defect is readily curable upon a motion to dismiss or for a bill of particulars. Having deprived the prosecution of an opportunity to cure the defect at the pretrial stage by failing to make such a motion, a defendant is properly held to have forfeited appellate review of the issue.

If an accused may forfeit his ability to assert on appeal that the indictment against him was so vague as to have completely deprived him of fair notice of the basis of the accusations against him *(People v Soto, supra),* then the argument now being advanced, that the slightest variance between the language of the indictment and the language of the Trial Judge's charge requires reversal, should likewise be considered forfeited if not properly preserved. Had the defendant in this case registered a protest to the Trial Judge's charge on this ground, it is very likely that the error now claimed to warrant reversal would have been cured.

We recognize that in *People v Rubin* (101 AD2d 71, 77), the Appellate Division, Fourth Department, held a somewhat similar error to be reviewable as a matter of law even in the

absence of an objection. However, the particular facts of the *Rubin* case reflect that the variation between the court's charge and the factual allegations of the indictment was so pronounced that it was readily inferable that the defendant had been deprived of notice of the real basis for the charges against him. To the extent that the holding of the *Rubin* case conflicted with this analysis or our precedent *(see, People v Prato,* 143 AD2d 205, *supra),* we decline to follow it.

## D

We conclude, as to this issue, that where the variance between the theory of the prosecution as reflected in the indictment and the theory of the prosecution as charged to the jury is so slight that no possibility exists that the defendant was deprived of his right to fair notice of the basis for the accusations against him, then no question of law is presented for review unless the defendant objects or takes exception to the charge at trial. The alleged error of law underlying the defendant's principal argument on this appeal therefore is not preserved for appellate review.

## II

In any event, even if the alleged error of law in the charge had been preserved for review, or if we were to consider it in the exercise of our interest of justice jurisdiction, reversal would not be warranted because there is no possibility that the jury's verdict was affected by the alleged error.

## A

The question of whether a given error of law is properly preserved for appellate review in the absence of an objection, and the question of whether a given error, even if subject to appellate review in the absence of an objection, requires automatic reversal, are distinct. The harmless error doctrine and the doctrine of preservation should not be confused. A particular error may be reviewable in the absence of an objection, and yet be subject to a harmless error analysis *(see, e.g., People v Morris,* 129 AD2d 591 [trial court's error in commenting on defendant's failure to testify, reviewable in the absence of an objection held harmless]; *People v McLucas,* 15 NY2d 167, *supra).*

This concept accords with logic because a holding that a

particular error is harmful per se indicates that such error will be tolerated even less than those errors which are held to be reviewable in the absence of an objection. Abandonment of the preservation doctrine results only in the appellate review of errors which were not the subject of dispute in the trial court. Abandonment of the harmless error doctrine results not only in appellate review of the error, but also in a particular disposition of the appeal, i.e., reversal.

As noted above, the doctrine of preservation has been held inapplicable only to those errors which are so fundamental as to be injurious to the interest which society at large has in the fair conduct of criminal trials. Similarly, a rule which requires a new trial because of an error which had no conceivable effect on the outcome can be justified only when such error is so fundamental as to be offensive to the public's right to be assured that all criminal trials are conducted with basic fairness. The harmless error doctrine should be abandoned only when the error under review "destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process" *(Rose v Mitchell,* 443 US 545, 555-556). From one standpoint, it could be considered an act of futility to mandate that a new trial be held because of the occurrence of a particular trial error where the ultimate outcome of the new trial will most assuredly be the same as the result of the first one. Thus, the former "Exchequer rule" which required automatic reversal whenever error appeared, without regard to whether the error affected the outcome of the trial, was rightly criticized as having " 'done more than any other one rule of law to increase the delay and expense of litigation [and] to encourage defiant criminality and oppression' " *(People v Jones,* 70 NY2d 547, 556 [Bellacosa, J., concurring], quoting 1 Wigmore, Evidence § 21, at 891 [Tillers rev 1983]).

The Supreme Court has consistently applied the harmless error doctrine to a wide variety of errors and defects *(see, Chapman v California,* 386 US 18; *see also, Delaware v Van Arsdall,* 475 US 673 [failure to allow cross-examination of witness]; *Rushen v Spain,* 464 US 114, 118 [denial of defendant's right to be present]; *United States v Hasting,* 461 US 499, 508, 509 [comment on defendant's failure to testify]; *Moore v Illinois,* 434 US 220, 232 [admission of witness identification obtained in violation of right to counsel]; *Milton v Wainwright,* 407 US 371 [admission of confession obtained in violation of right to counsel]; *Gerstein v Pugh,* 420 US 103 [illegal arrest]). In *Rose v Clark* (478 US 570, 579), the Su-

preme Court stated that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis" *(cf., Gideon v Wainwright,* 372 US 335 [complete absence of counsel cannot be harmless]; *Tumey v Ohio,* 273 US 510 [judgment rendered by biased Judge cannot be subject to harmless error doctrine]).

## B

Consistent with this general rule, the Court of Appeals explicitly held, in *People v Grega* (72 NY2d 489, *supra),* that the variance between the Trial Judge's charge to the jury, on the one hand, and the allegations of an indictment, on the other, may be considered harmless where there is no possibility that the jury premised its determination of guilt upon a theory not contained in the indictment. In this respect, the court agreed with the dissenters at the Appellate Division who noted that there was no possibility that defendant's guilt had been premised on the theory which, although charged to the jury, was not contained in the indictment *(People v Grega,* 132 AD2d 749, 750, *supra* [Yesawich, Jr., and Harvey, JJ., dissenting]). In *People v Roberts* (72 NY2d 489), decided together with *People v Grega (supra),* the court expressly noted that the variance between the allegations of the indictment and the theory employed by the prosecution at trial was prejudicial to the defendant, the implication being that reversal would not be warranted on this basis in the absence of such proof.

The approach taken by the Court of Appeals in the *Roberts* and *Grega* cases *(supra)* is consistent with several cases decided in the Federal courts, which hold that a variance between the allegations contained in the indictment and the evidence presented at trial does not constitute reversible error unless the variance is of a magnitude such that it can be inferred that the defendant was surprised, misled, or otherwise prejudiced at trial *(see, e.g., United States v Kramer,* 711 F2d 789 [7th Cir]; *United States v Schoenhut,* 576 F2d 1010 [3d Cir]; *United States v Bolzer,* 556 F2d 948 [9th Cir]; *United States v Quicksey,* 525 F2d 337 [4th Cir]). In *Berger v United States* (295 US 78), for example, it was held that a variance between the terms of the indictment and the proof could be considered harmless where the variance was not of the sort as would have misled the defendant at trial *(cf., Kotteakos v United States,* 328 US 750; *see also, Riley v United States,* 411

F2d 1146 [9th Cir]; *Jacobs v United States,* 395 F2d 469 [8th Cir]).

Also, the harmless error analysis employed by the Court of Appeals in the *Grega* case *(supra),* was not unprecedented in this State. For example, in *People v Zimmer* (88 AD2d 1031), the Appellate Division, Third Department, stated that "[a]ny variance [between the allegations of the indictment and the proof at trial] * * * was harmless since, on this record, defendant was not misled, surprised or prejudiced in any substantial way. In fact, he has made no claim of prejudice". Similarly, in *People v Cunningham* (64 AD2d 722, 723), the Third Department stated that the "defendant has not shown he was prejudiced by this technical defect [a variation between the proof and the allegations of the indictment], and therefore it is not a basis for reversal".

Viewing the record of this case in its entirety, we conclude that the defendant was not in any way prejudiced by the Trial Judge's alleged *Kaminski* error *(see, People v Kaminski,* 58 NY2d 886, *supra).* We also conclude that there is no possibility at all that this error affected the jury's verdict. Under no rational view of the evidence could the jury in this case have convicted the defendant based on a finding that he threatened but did not actually exert physical force. The evidence in the present case proves that the defendant accomplished his crime by actual force (of a particularly brutal nature) as well as by the threats naturally implicit therein. There is no rational process of thought by which a juror in the present case could have found that the defendant subjected the victim to sexual contact by threats of violence alone and not by actual violence.

### C

In short, any *Kaminski* error in this case was harmless.

### III

The defendant's remaining contentions, including (1) his claim that a justification charge should have been given with respect to one count of the indictment (such a charge was given with respect to another), (2) his claim that certain character witnesses were subjected to improper cross-examination, and (3) his claim that his cross-examination of a prosecution witness was improperly limited, are, in large part, not preserved for appellate review. To the extent that the defen-

dant's remaining claims of error are preserved, we find them to be without merit.

Finally, the imposition of consecutive sentences was appropriate under the facts of this case because the offenses charged involved separate and distinct acts which do not share common material elements *(see, People v Truesdell,* 70 NY2d 809, 811; *People v Brathwaite,* 63 NY2d 839, 843; *People v Underwood,* 52 NY2d 882, 883; *cf.,* Penal Law § 70.25 [2]).

THOMPSON, J. P., EIBER and SPATT, JJ., concur.

Ordered that the judgment is affirmed.