■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL BELLO, Appellant. [631 NYS2d 714] —Appeals by the defendant from (1) a judgment of the Supreme Court, Queens County (Berkowitz, J.), rendered April 22, 1992, convicting him of robbery in the second degree under Indictment No. 1607/91, upon a jury verdict, and imposing sentence, and (2) an amended judgment of the same court (O'Dwyer, J.), rendered April 23, 1992, revoking a sentence of probation previously imposed by

the same court, upon a finding that he had violated a condition thereof, upon his admission, and imposing a sentence of imprisonment upon his previous conviction of criminal sale of a controlled substance in the third degree under Indictment No. 8223/87.

Ordered that the judgment and the amended judgment are affirmed.

The defendant has not preserved for appellate review his contention that the complainant's identification testimony under Indictment No. 1607/91 should have been suppressed because of the People's failure to give notice of a station house identification (see, CPL 470.05 [2]; People v Medina, 53 NY2d 951; People v Udzinski, 146 AD2d 245; People v Walters, 116 AD2d 757) and, in any event, the contention is without merit. The due process concerns underlying the notice provisions of CPL 710.30 are implicated whenever identification procedures come about at the deliberate direction of the State (see, People v Dixon, 85 NY2d 218, 222-223; People v Newball, 76 NY2d 587, 591). Accordingly, a Wade hearing is not necessary where the identification of a defendant was not police arranged (see, People v Dixon, supra). When the police do not arrange the identification of a defendant, the identification is a non-police-sponsored identification "resulting from mere happenstance, such as where a witness is present in police headquarters for some purpose other than to effectuate an identification, and by chance views and identifies a suspect who is being processed in another room" (People v Dixon, supra, at 223).

The complainant's identification of the defendant in this case was not arranged by the police. After the complainant was robbed of money and jewelry, he was taken to the police precinct to complete a police report of the incident. Officer Stephen Yorkus, one of the arresting officers, testified during voir dire that the defendant and another individual apprehended by the police were placed in a holding pen before the complainant arrived at the station house and that the holding pen could not be seen from the complainant's location in the waiting area. Officer Yorkus stated that he had no knowledge as to whether the complainant walked over to the holding pen to view the defendant and his alleged accomplice or whether any other officer had such knowledge. Officer Yorkus could only speculate as to how the complainant was able to view the defendant and his alleged accomplice. By whatever means the complainant came to see the defendant, it is clear from Officer Yorkus' testimony that the police did not arrange the viewing. Moreover, the defendant had a full and fair opportunity to

cross-examine the complainant and Officer Yorkus regarding the viewing both at trial and during the voir dire.

Since the police did not arrange the complainant's identification of the defendant, the prosecution was not required to notify the defendant of the identification (see, CPL 710.30; *People v Rodriguez*, 194 AD2d 634; *People v Overton*, 192 AD2d 624).

In light of our determination, the defendant's remaining contention is without merit. Copertino, Joy and Hart, JJ., concur.

Ritter, J. P., dissents and votes to remit the matter to the Supreme Court, Queens County, to hear and report on that branch of the defendant's motion which was to preclude the identification testimony of the complainant and to hold the appeal in abeyance in the interim with the following memorandum: In the early morning hours of March 9, 1991, two men claiming to have a gun robbed the complainant of money and jewelry before fleeing in a car. Two police cruisers responded to the scene. After speaking to the complainant, the officers in one of the cruisers left to canvass the area for suspects. Shortly thereafter, they saw two men who resembled the description of the robbers given by the complainant standing in a doorway. The two men, one of whom was the defendant, were detained and the complainant was brought to the location to make an identification. The complainant identified both men. The validity of this street show-up identification, which was duly noticed by the People and challenged at a pre-trial *Wade* hearing by the defense, is not challenged on appeal.

However, at trial, for the first time, the defense learned that there had been a second viewing of the suspects at the station house which resulted in the release of the second suspect arrested with the defendant. This information was elicited by the People as part of their direct case. Concerning this station house viewing, the complainant testified "I had an opportunity to look—to closely look at them both". In contrast to the doubts the complainant expressed concerning his identification of the second suspect, the complainant testified that his station house viewing of the defendant made him "absolutely sure" that the defendant had been one of the assailants. The defense entered a timely objection that it had received no notice of this station house viewing and moved, *inter alia*, for preclusion of the identification testimony of the complainant. The People argued that the testimony concerning the station house viewing was offered merely to explain to the jury why the second suspect had been released, not to identify the defendant, and, therefore,

need not have been noticed. The court, holding that the station house viewing was inadvertent, merely confirmatory, and not police arranged, denied the defendant's motion. On appeal, the defendant argues, *inter alia,* that the People's failure to give him notice of the complainant's station house viewing pursuant to CPL 710.30 requires reversal of his conviction and dismissal of the indictment.

CPL 710.30 requires, *inter alia,* that the People give the defendant notice within 15 days of arraignment of all relevant prior qualifying identifications made of him or her by a witness who is to identify him or her at trial *(see generally, People v Rodriguez,* 79 NY2d 445). Unless otherwise excused *(see, e.g.,* CPL 710.30 [2], [3]), the penalty for failing to give notice of prior identifications pursuant to CPL 710.30 is preclusion of all of the identification testimony of a witness whose prior identifications were not properly noticed *(see, People v Perez,* 177 AD2d 657). If a defendant initially moves to preclude evidence based on lack of CPL 710.30 notice and loses, his objection is preserved and the lack of notice cannot be cured by a subsequent hearing *(see, People v Laing,* 79 NY2d 166; *People v Bernier,* 73 NY2d 1006).

However, not all prior viewings of a defendant by a witness are identifications subject to CPL 710.30. The courts have held that various narrowly-defined categories of prior viewings do not fall within the intendment of CPL 710.30 and, therefore, need not be noticed. These exceptions include, *inter alia,* viewings that are merely confirmatory *(see, People v Wharton,* 74 NY2d 921; *People v Williamson,* 79 NY2d 799; *People v Tas,* 51 NY2d 915), viewings that are not police arranged *(see, People v Gissendanner,* 48 NY2d 543), and viewings that are inadvertent *(see, People v Overton,* 192 AD2d 624; *People v Ravenell,* 179 AD2d 788). When factual questions arise as to whether a viewing fits into one of these categories, a so-called "pre-*Wade*" hearing may be held to determine if there is a need for a *Wade* hearing *(see, People v Williamson,* 79 NY2d 799, *supra).*

A unilateral determination by the People that a prior viewing falls within one or more of these categories and, therefore, need not be noticed, has great attendant risks. Such risks are exemplified by the case at bar. Here, the sole witness who identified the defendant at trial was the complainant. Indeed, the complainant's testimony was the sole evidence connecting the defendant to the crime. Accordingly, any error in admitting the victim's identification testimony would not be harmless *(see, People v Moss,* 80 NY2d 857). Thus, a determination that notice of the station house viewing should have been given

pursuant to CPL 710.30 would require not only a reversal of the conviction, but also a dismissal of the indictment. However, because I believe that such a determination is not possible on the record before this Court, I would remit the matter for a hearing.

The excuse proffered by the People at trial must be rejected. Even if the intent of introducing the complainant's testimony concerning the station house viewing was merely to explain why the second suspect was freed, the effect of the testimony was clearly to identify the defendant, both inferentially and directly, as one of the robbers.

In addition, the court's conclusion that the station house viewing was merely confirmatory is not supported by the record. A conclusion that a viewing of a defendant by a civilian witness is merely confirmatory is tantamount to a finding, as a matter of law, that "the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification" *(People v Rodriguez, supra,* 79 NY2d, at 450, quoting *People v Collins,* 60 NY2d 214). However, although this exception may be applied confidently when the witness and defendant are family members, friends, or long-time acquaintances, it should not be applied when the "familiarity emanates from a brief encounter" *(People v Rodriguez, supra,* 79 NY2d, at 450). Here, because there is no evidence that the complainant was familiar with the defendant other than from the time he observed him during the robbery and again during the street showup, and other unique factual circumstances are otherwise absent *(see, e.g., People v Sanford,* 184 AD2d 671), it cannot be said, as a matter of law, that there was little or no risk that the station house viewing, no matter how suggestive, could not have lead to a misidentification. Thus, on the facts, the confirmatory exception to CPL 710.30 notice should not have been applied.

There is a possibility that the station house viewing was inadvertent *(see, e.g., People v Strudwick,* 170 AD2d 969; *People v Hampton,* 129 AD2d 736; *People v Brown,* 123 AD2d 875) or was not arranged by the police *(see, e.g., People v Sanford,* 184 AD2d 671, *supra).* However, whether either of these exceptions to the CPL 710.30 notice requirements is applicable in this case can not be determined on this record. After the defendant's motion for preclusion was denied, the court permitted the defense, in what might be characterized as a mid-trial pre-*Wade* hearing *(see, e.g., People v Breland,* 191 AD2d 500, *affd* 83 NY2d 286), to examine a police officer concerning the station house viewing. Although the officer testified that the de-

fendant was in a holding pen outside the view of the complainant while they were at the station house, his only testimony as to how a viewing might have occurred was his speculation that the complainant might have seen the defendant "if he went to the bathroom or [to] get a soda". Thus, in essence, there is no testimony on the record as to how the station house viewing came about. Indeed, the officer's testimony, which suggests a fleeting viewing of the defendant, appears to contrast with the complainant's testimony that he had an opportunity to "closely look" at the defendant. Accordingly, I would remit the matter for a hearing to determine the nature of the station house viewing of the defendant *(see, People v Rodriguez, supra,* 79 NY2d 445; *People v Breland,* 191 AD2d 500, *supra).*