■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCO TEDESCO, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County (Weissman, J.), rendered December 9, 1982, convicting him of murder in the second degree (four counts), attempted murder in the second degree, robbery in the first degree (two counts) and assault in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

On December 8, 1981, at about 10:00 A.M., the defendant and his codefendant Joseph Sullivan robbed Dennis Dukofsky, a pharmacist at the Prescription Den drugstore in Selden, New York. In the evening on that same date the defendant and Sullivan proceeded to an apartment shared by Virginia Carson and Andrew Soldo located at the Tall Oaks apartment complex in Selden where, during the course of a aborted drug transaction, they robbed, shot and knifed Carson, Soldo and a third individual, Richard Bretz. Carson and Bretz died as a result of the wounds suffered in the attack but Soldo remarkably survived the brutal assault. Following a joint trial, a jury convicted the defendant and Sullivan of four counts of murder in the second degree (two counts of intentional murder and two counts of felony murder; Penal Law § 125.25 [1], [3]), attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), two counts of robbery in the first degree (two counts) (Penal Law § 160.15 [4]), and assault in the first degree (Penal Law § 120.10 [1]).

Prior to the trial, a *Wade* hearing was conducted to determine, *inter alia,* whether two photographic arrays shown to the pharmacist Dukofsky on December 10, 1981, two days after the commission of the robbery, were so unduly suggestive as to be violative of due process and tainted the in-court identification of the defendant. Detective Russell Doring, a 19-

year veteran of the Suffolk County Police Department, testified that on December 10, 1981, he was given two photographs of the defendant and two photographs of the codefendant Sullivan by an officer of the Suffolk County Homicide Squad. Detective Doring prepared two photographic arrays consisting of six photographs each. Each array contained a photograph of the defendant and of Sullivan. In order to supply photographs of individuals who resembled the defendant and Sullivan, Detective Doring had reviewed 5 or 6 carousels each of which contained 35 or 40 photographs. After viewing separately the two arrays, Dukofsky selected the defendant's picture from each. The defendant makes no specific claim that the photographic arrays were improperly presented. Rather he argues that the two photographic arrays viewed by Dukofsky were impermissibly suggestive because in one array he was the only man featured wearing a suit and in the second array his photograph was glossier than the other five photographs. An examination of the two arrays employed in this case demonstrates that they did not create a substantial likelihood of irreparable misidentification *(see, People v Coleman,* 114 AD2d 906).* Contrary to the defendant's contention, the victim had not described the perpetrators of the robbery as wearing suits on the date of the crime. Thus, although the better practice might have been to have displayed photographs of individuals who were similarly attired, the mere fact that the defendant's photograph showed him wearing a suit did not serve to draw the viewer's attention to the defendant's picture and indicate that the police had made a particular selection *(see, People v Olkoski,* 131 AD2d 706; *People v Emmons,* 123 AD2d 475, *lv denied* 69 NY2d 827; *cf., People v Grant,* 130 AD2d 589, *lv denied* 70 NY2d 647). Nor did the fact that the quality of the defendant's photograph in the second array differed from that of the other five photographs render the array unduly suggestive, particularly since the photographs showed full views of individuals who were substantially similar in appearance to the defendant *(see, People v Emmons, supra; People v Fox,* 65 AD2d 880).

The defendant also claims that the People failed to establish his guilt of the robbery of Carson, Soldo and Bretz beyond a reasonable doubt and, therefore, his guilt of felony murder was not proved. Although the evidence of the robbery adduced at trial was essentially circumstantial, that evidence was legally sufficient to establish the defendant's guilt and to exclude to a moral certainty every reasonable hypothesis of innocence *(see, People v Morgan,* 66 NY2d 255, 256; *People v*

*Benzinger,* 36 NY2d 29, 32; *People v Sims,* 110 AD2d 214, 222, *lv denied* 67 NY2d 657).

The evidence in this case reveals that several days prior to the date of the crimes charged the defendant and his codefendant were at the Soldo apartment. At that time, in response to an inquiry from Bretz, the defendant promised to try to obtain an ounce of cocaine at a cost of $2,300. On December 8, 1981, the defendant called Soldo to arrange delivery of the cocaine to Bretz. The defendant was to arrive at Soldo's apartment at 7:00 P.M. Pursuant to Soldo's direction, Bretz arrived at 6:30 P.M. and when Soldo asked whether he had the money for the drugs, Bretz responded by counting 23 $100 bills onto the dining room table. Shortly thereafter, the defendant and Sullivan arrived at the Soldo apartment. Virginia Carson opened the apartment door. Immediately upon gaining entry to the apartment, Sullivan produced a gun and shot Soldo, Carson and Bretz in quick succession. The defendant cut each victim's throat in response to Sullivan's direction to "[m]ake sure they're dead". The police who responded to the scene at 9:10 P.M. found the apartment door unlocked and no trace of the $2,300.

The defendant argues that during the two-hour period between the shootings and the arrival of the police anyone could have entered the unlocked apartment and taken the money. The testimony of Soldo and Soldo's downstairs neighbor reveals, however, that during that period Soldo was unconscious for only about 30 minutes. There is no proof that anyone entered the apartment after the defendant's departure and prior to the arrival of the police. The only reasonable inference to be drawn from these facts was that the defendant and his accomplice entered the Soldo apartment with the intent to take the money for the drug transaction and, indeed, in pursuit of that goal brutally attacked the victims. From this evidence, the jury could properly infer that the defendant and Sullivan took the $2,300. The mere possibility that someone other than the defendant may have taken the money does not preclude a guilty verdict as to the robbery and felony murder charges. It is the function of the jurors to assess conflicting evidence and they may credit some items of evidence while rejecting other evidence *(see, People v Ford,* 66 NY2d 428, 437).

Equally unpersuasive is the defendant's claim that the identification testimony of Dukofsky was not sufficient to support his conviction of robbery in the first degree involving the pharmacy. The defendant's argument is based upon the

conclusion that the photographic arrays exhibited to the victim were unduly suggestive. This court rejects that conclusion thereby leaving resolution of the accuracy of the identification testimony as a question for the jury. Its resolution in this regard is entitled to great weight on appeal *(see, People v Askinazi,* 130 AD2d 665, 666, *lv denied* 70 NY2d 709). Moreover, upon the exercise of our factual review power, we find that the verdict considered as a whole was not against the weight of the evidence (CPL 470.15 [5]).

The defendant recites numerous acts, omissions and errors of the trial court, the prosecution, his codefendant and the codefendant's counsel which he contends served both individually and cumulatively to deprive him of a fair trial. These alleged errors, in large part, have not been preserved for appellate review because of the defendant's failure to object at trial (CPL 470.05 [2]; *People v Nuccie,* 57 NY2d 818). Moreover, given the nature of the proof against the defendant, such claims do not warrant review in the interest of justice. We are compelled, however, to comment on several of the issues raised.

The defendant claims he suffered substantial and irreparable prejudice due to his codefendant's disruptive behavior during the trial. The most significant outburst which occurred in the presence of the jury was followed by a motion by both defense counsel for a mistrial. The defendant conveniently ignores the reflection in the record that he joined in this disruption by his codefendant and that the motion for a mistrial was based not upon the conduct of his codefendant but rather upon a reference by the key prosecution witness Soldo to the codefendant's alleged prior representation by Ramsey Clark on an unrelated case. Thus, because the application for a mistrial was upon a different ground than that sought to be raised on appeal, there is no basis for this court to review the defendant's claim of error (CPL 470.05 [2]; *People v Chin,* 67 NY2d 22, 33-34; *People v Nieves,* 67 NY2d 125, 136, *mot to amend remittitur denied* 67 NY2d 1028). In any event, the defendant is not entitled to benefit from his own contumacious behavior in the absence of irremediable prejudice *(see, People v Astacio,* 131 AD2d 684; *People v Trippett,* 121 AD2d 485, *lv denied* 68 NY2d 774; *People v Nathan,* 110 AD2d 858). At bar, the trial court removed the jury from the courtroom upon the onset of the most serious disruption by both the defendant and his codefendant and instructed the jury to disregard the incident. An alternate juror who apparently was so disturbed by the defendant and

codefendant that she could not continue to serve on the jury was excused from further service upon the consent of both defense counsel and the prosecutor. Furthermore, the trial court, on its own initiative, admonished the defendant and his codefendant with respect to the danger of prejudice to their case which might result from a continuation of their disruptive behavior and instructed them to refrain from further outbursts. Under these circumstances and in light of the overwhelming evidence of guilt, no irremediable prejudice warranting reversal of the defendant's conviction is evident.

Of greater significance is the defendant's claim that he was deprived of a fair trial because he was forced to wear leg irons during the trial. Numerous instances in the decisional law may be found in support of the presumptively prejudicial effect of displaying an accused in restraints before a jury in the course of a trial (see, e.g., People v Mendola, 2 NY2d 270, 275-277; People v Thomas, 125 AD2d 873; People v Gonzalez, 115 AD2d 899, 901, appeal dismissed 68 NY2d 995). Such restraint of a defendant constitutes reversible error unless there is a rational or justifiable basis therefor articulated on the record (People v Thomas, supra; People v Gonzalez, supra; cf., People v Neu, 124 AD2d 885) or the jury was not prejudiced thereby (People v Mendola, supra, at 275). Here, adequate facts appear in the record to demonstrate necessity for appropriate security measures. The prosecutor, as an officer of the court, represented that there were strong indications that both the defendants were planning an escape. Indeed, the codefendant had previously escaped from other penal institutions. Notwithstanding the reasonable explanation offered for not removing the leg irons, the trial court also took reasonable precautions to shield the defendant's shackled legs from the jury's view. At the defense counsel's request, the seating arrangement at the defense table was altered and both the prosecution and defense tables were fitted with floor-length skirts which exhibits in the record show successfully rendered any observation of the defendant's legs impossible. The defendant's counsel also declined the trial court's offer to provide the jury with a cautionary instruction (cf., People v Neu, supra).

Finally, the defendant recites a litany of alleged deficiencies in the representation provided by his trial counsel including his attorney's failure to move for a severance on the basis of his codefendant's disruptive behavior, his attorney's decision to introduce into evidence the photographic array viewed by the victim of the pharmacy robbery, and defense counsel's

failure to object to the alleged prejudicial summation of his codefendant's counsel. Upon our review of the trial record, we are persuaded that the defendant was defended vigorously and with reasonable competence. His trial counsel vigorously cross-examined the People's witnesses, presented creative and frequently successful arguments to the court in support of his trial applications and forcefully set forth the defense position in his summation. Whatever errors may have been committed in failing to object or in electing one trial strategy over another did not serve to establish ineffective representation under currently applicable criteria *(see, Strickland v Washington,* 466 US 668, 686-691, *reh denied* 467 US 1267; *People v Satterfield,* 66 NY2d 796, 799-800; *People v Jackson,* 74 AD2d 585, *affd* 52 NY2d 1027).

We have considered the defendant's remaining contentions including the alleged excessiveness of his sentence and find them to be unpreserved for appellate review or without merit. Mollen, P. J., Thompson, Lawrence and Weinstein, JJ., concur.