THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOSEPH SULLIVAN, Appellant.

Second Department, January 8, 1990

## APPEARANCES OF COUNSEL

*John F. Middlemiss, Jr. (George Grun* of counsel), for appellant.

*James M. Catterson, Jr., District Attorney (Patricia A. Murphy* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

On December 8, 1981, the defendant and his accomplice and codefendant, Marco Tedesco, went to the apartment of Andrew Soldo in Selden, New York, in connection with a prearranged drug transaction. Upon entering the apartment, the defendant removed a handgun from his pocket and shot Mr. Soldo in the head. The defendant then proceeded to shoot Richard Bretz and Virginia Carson, two other occupants of the apartment. As the three victims lay wounded on the floor, the defendant fired several more shots into Mr. Bretz, and then instructed his codefendant to "Make sure they're dead". Tedesco attempted to comply with this directive by slashing the three victims on their faces and throats, and, with respect to Ms. Carson and Mr. Bretz, he succeeded in fulfilling the defendant's command. Miraculously, however, Mr. Soldo survived and lived to tell the details of this slaughter to a Suffolk County jury.

The evidence against the defendant and the codefendant in this case was overwhelming. Mr. Soldo was a prior acquaintance of the defendant, and was able to identify him at trial in an unhesitating manner that left no room for doubt. There was voluminous background testimony which established that the defendant and Mr. Tedesco had previously arranged to meet Mr. Soldo as well as Mr. Bretz at Soldo's apartment in order to consummate a sale of $2,300 worth of narcotics. The jury also heard the testimony of the pharmacist who identified the defendant as one of the two men who had assaulted him, and who had forcibly stolen drugs from him at gunpoint earlier on the day in question. Bullets later removed from Mr. Bretz's and Ms. Carson's bodies were ballistically linked to a Titan pistol, equipped with a silencer, which had been recovered from the defendant's automobile.[1] There was a large volume of additional corroborative evidence which need not be described here.

---

1. This weapon, a .32 caliber automatic Titan, was produced at trial, and was identified by Mr. Soldo as the weapon used by defendant at the time of the murders, and as the weapon which, a few days earlier, the defendant had displayed at a prior meeting. The pharmacist also testified that the weapon produced at the trial appeared to be the same as the silver-barreled gun used during the robbery of his pharmacy.

The jury convicted both the defendant and the codefendant. The appeal taken by the codefendant resulted in an affirmance *(People v Tedesco,* 143 AD2d 155). In the present appeal, the defendant's primary argument is that he was denied his constitutional right to the effective assistance of counsel (US Const 6th, 14th Amends; NY Const, art I, § 6). This argument is premised largely on the fact that the defendant's trial attorney, during his summation to the jury, did little more than disparage the victims of the defendant's crimes in terms which any decent person would find offensive. Ms. Carson was referred to as "Mary Poppins getting it right between the eyes". Mr. Soldo was referred to as the one "junkie" who survived, and was also characterized as a "frog-legged pimp". All three victims were repeatedly described as being "skells", "pimps" or "junkies". These epithets are merely illustrative of the over-all tone of defense counsel's summation, the basic theme of which was to suggest to the jury that the defendant should be considered innocent, because the victims of the murders and attempted murder were themselves unsavory moral degenerates who, according to the implications to be drawn from the defense counsel's summation, deserved to die.

The attorneys for the defendant on this appeal to this court take a justifiably dim view of trial counsel's effort to evade his client's criminal responsibility by convincing the jury that the victims of the defendant's rampage received their just deserts. It is now argued that the tactic of disparaging the victim—a tactic which, we must acknowledge, is used to a greater or lesser extent in a number of cases—was ill-suited to the facts of this case, and was used by trial counsel to an unwarranted degree. It is argued that the defense counsel's verbal assault on the deceased victims and on the chief prosecution witness was so outrageous as to have had precisely the opposite effect from that which the defendant's trial counsel evidently intended, that is, the provocation of passion directed against the defendant rather than against his victims.

■ We reject this argument for two reasons. First, we find that however offensive it might have been, the theme of defense counsel's summation must, in the absence of any proof to the contrary, be presumed to have been devised as part of a trial strategy. Second, we conclude that even if the conduct of the defendant's attorney be considered as an example of actual misconduct, rather than merely as an example of an ill-conceived trial tactic, under the standard enunciated in

*Strickland v Washington* (466 US 668), the defendant is not entitled to a new trial because the alleged misconduct did not affect the outcome of the trial.

It is now a firmly established rule of New York law that a claim of ineffective assistance of counsel may not be premised solely upon trial counsel's unsuccessful employment of a trial strategy, even when the strategy in question may be "daring and innovative" *(People v Baldi,* 54 NY2d 137, 151; *see also, People v Satterfield,* 66 NY2d 796, 798). "The right to counsel was not intended to afford a defendant, aided by the wisdom of hindsight, to second guess matters of trial strategy employed by counsel" *(People v Aiken,* 45 NY2d 394, 399; *see, People v Rivera,* 71 NY2d 705; *People v Benn,* 68 NY2d 941; *see also, People v Coleman,* 142 AD2d 586, 587-588; *People v Nevarez,* 141 AD2d 861, 862).

The weightier the evidence possessed by the prosecution, the more desperate the tactics employed by the defense counsel are likely to become, and appellate courts consistently refuse, when reviewing claims of ineffective assistance of counsel, to second-guess the employment of questionable or debatable trial strategies, even when such strategies include, for example, counsel's actually conceding his client's guilt of some of the charges *(see, e.g., People v Bone,* 154 Ill App 3d 412, 506 NE2d 1033; *State v Berry,* 430 So 2d 1005 [La] [counsel conceded defendant's guilt of robbery in attempt to avoid conviction of murder]; *People v Wise,* 134 Mich App 82, 351 NW2d 255 [counsel admitted client's complicity in burglary]; *Commonwealth v Stoute,* 10 Mass App 932, 413 NE2d 739 [counsel admitted client's guilt of assault in effort to avoid conviction of a kidnapping]; *see also,* Annotation, *Defense Counsel—Argument,* 6 ALR4th 16, §§ 7-9, at 40-44).[2] It is not surprising, in the present case, that the defendant's attorney, having properly assessed his client's chances of exoneration at the hands of a properly guided and fair-minded jury as being negligible at best, decided, as a tactical matter, to attempt to misguide and to prejudice the jurors, and to have them render a verdict based neither upon the evidence nor upon the law, but rather, upon their emotions, which the defendant's attorney did his best to inflame. Now that this tactic has failed, the defendant's appellate attorneys should not be permitted to argue that the defendant's trial attorney was "ineffective".

---

2. Counsel's summation in the present case contained no explicit admission of guilt.

The case of *People v Wise* (64 AD2d 272) illustrates the principle that the misconduct of a defendant's trial attorney, perpetrated as part of a deliberate stratagem, may not serve as the basis for a claim, on appeal, that the defendant was denied his right to the effective assistance of counsel. In *People v Wise (supra)*, the defendant's trial attorney in the presence of the jury announced to the Trial Judge that he refused to continue with the trial, and then walked out of the courtroom after having berated the Judge in an insulting and unprofessional way *(People v Wise, supra,* at 274-275). The Appellate Division stated that it would not " 'permit defendant's counsel to accomplish that which we will not permit a defendant to accomplish himself: that is, to render his trial a nullity' " *(People v Wise, supra,* at 277, quoting from *People v Aiken,* 45 NY2d 394, 399, *supra)*.

The statements made in the *Wise* case *(supra)* reflect a widely held concern that, in desperate cases, a defense lawyer may feign incompetence, or otherwise deliberately attempt to interject reversible error into the record. Where the evidence is so overwhelming that it may truthfully be said that the defendant has *no* defense, there is always a risk that a defense attorney will simply attempt to "throw" the case *(see generally, Commonwealth v Stoyko,* 504 Pa 455, 475 A2d 714, *cert denied* 469 US 963 [appellate court may refer case to disciplinary board where inference appears that defense counsel feigned ineffectiveness in order to create appellate issue]; *Lahmann v State,* 509 SW2d 791 [Mo] [rejecting claim of ineffective assistance of counsel where defendant and attorney adopted tactic for purpose of creating reversible error]; *see also,* Annotation, *Adequate Representation by Counsel,* 2 ALR4th 27, § 3 [c]). Our Court of Appeals has recognized, in a different context, the risk of giving "sophisticated defendants and unscrupulous attorneys a delayed-trigger weapon to be sprung at some later strategic phase of the proceeding if events developed very badly for a defendant" *(People v Winkler,* 71 NY2d 592, 598). The conduct of the defense counsel in the present case should not be permitted to serve as such a "delayed-trigger weapon" which the defendant, now represented by different attorneys, is attempting to "spring" on appeal. In the present case, where it is clear that the defendant has no viable defense to the charges against him, there is a substantial probability that trial counsel may have employed a strategy which was calculated more to provoke a

reversal on appeal than to enhance the defendant's negligible chance of success at trial.

We need not decide whether we might have been impelled to reach a different result had the record on appeal included proof, developed by way of a postjudgment motion, which tended to show that, in fact, the defendant did not approve in advance of his attorney's reckless strategy. We note only that, if the defendant had intended to present such additional proof, it was incumbent upon him to make the appropriate posttrial motion (CPL 440.10; *see, People v Love,* 57 NY2d 998; *People v Brown,* 45 NY2d 852 [arguments based on ineffective assistance of counsel must ordinarily be supported by record developed in collateral proceeding]; *see also, People v Salgado,* 140 AD2d 855, 856; *People v Garay,* 136 AD2d 652, 653; *People v Smith,* 112 AD2d 389; *People v Marchand,* 104 AD2d 624; *People v Leonard,* 102 AD2d 857).

Even if we were to consider the defense counsel's misbehavior as an instance of misconduct, undertaken with neither the defendant's knowledge nor with his consent, we would reject the argument based on ineffective assistance of counsel now being advanced. It is clearly established as a matter of Federal constitutional law that a demonstration of actual prejudice is a necessary component to a claim of ineffective assistance of counsel *(see, Strickland v Washington,* 466 US 668, *supra; see also, Darden v Wainwright,* 477 US 168, 184). This standard has been widely adopted in other jurisdictions *(see,* Annotation, *Adequate Representation by Counsel,* 2 ALR4th 27, § 6 [a]) and there is, in our view, no definitive authority for the proposition that New York law is not consistent with the Federal standard *(cf., People v Benn,* 68 NY2d 941, 942, *supra* [not deciding whether *Strickland* test should be adopted]; *People v Garcia,* 149 AD2d 241). This court has, on many prior occasions, applied the *Strickland* test without suggesting that New York law requires application of any different standard *(see, e.g., People v Harris,* 109 AD2d 351, 361; *People v Wagner,* 104 AD2d 457; *People v Karamanites,* 104 AD2d 899, 901; *cf., People v Norris,* 108 AD2d 760, 761-762; *People v Lundy,* 104 AD2d 384, 385).

Application of the prejudice test in the instant matter results in the conclusion that, had the defendant's attorney not committed the misconduct ascribed to him, the jury's verdict would without any doubt have been the same. In this respect, it must be remembered that the defendant was tried jointly with a codefendant whose position at trial was essen-

tially the same as that advanced by the defendant, and whose attorney delivered just the sort of summation as that which the defendant now claims his attorney should have delivered, that is, a summation which merely pointed out inconsequential inconsistencies in the People's evidence. The positions of the two defendants at trial were so similar that it is almost as though they each had a team of two attorneys.[3] Furthermore, it must be presumed that the jury adhered to the basic principle that the facts are to be judged not in accordance with the content of the arguments of counsel, but instead in accordance with the content of the evidence.

■ It is of no consequence that the trial attorney who represented the defendant in this case was found, in an unrelated proceeding, to have fallen below objective standards of competence *(see, Quartararo v Fogg,* 679 F Supp 212, *affd* 849 F2d 1467).* In our opinion, the determination of effectiveness in *Quartararo v Fogg (supra)* has no relevance to the issue presented in the instant case *(see generally, Wynn v State,* 265 Ind 133, 352 NE2d 493; *State v Edwards,* 73 NC App 599, 327 SE2d 16; *but cf., Ex parte Williams,* 548 SW2d 910 [Tex]; *see also,* Annotation, *Adequate Representation by Counsel,* 2 ALR4th 27, § 13 [f]).[4]

In conclusion, we find that the tactics employed by the defendant's attorney in his summation were reprehensible. It must be acknowledged, however, that these tactics differed only in degree, and not in kind, from the sort of tactics often employed by aggressive defense attorneys, particularly in those cases where defendant has no valid defense, and where the strength of the prosecution's case rendered conviction inevitable. Had a prosecutor engaged in the sort of misconduct

---

**3.** On his appeal to this court, the codefendant Tedesco complained that he had been prejudiced by the conduct of the attorney for the defendant herein. In affirming the codefendant's conviction, we necessarily found that the interest of justice did not warrant a reversal in Tedesco's favor based on the misconduct committed by the defendant Sullivan's attorney *(People v Tedesco,* 143 AD2d 155). If defense counsel's misconduct was insufficient to warrant such a reversal in favor of the codefendant, who presumably could have exercised no control over counsel's behavior, then it follows, a fortiori, that such a reversal in favor of the defendant, who presumably *did* exercise control over his attorney's behavior, is also unwarranted.

**4.** We also note that the determination of the Federal District Court in the habeas corpus proceeding under review in *Quartararo v Fogg* (679 F Supp 212, *affd* 849 F2d 1467) is directly inconsistent with the determination made by this court in connection with the direct appeal *(see, People v Quartararo,* 113 AD2d 845, 850).

committed by the defense counsel in this case, the defendant rightfully would be considered to have been prejudiced. In this case, conversely, the defense lawyer's misconduct prejudiced the People and the chief witness for the People.

■ The defendant's related arguments concerning the supposed ineffectiveness of his trial counsel are meritless. The defendant's attorney cannot be considered ineffective because he withdrew a motion to suppress certain evidence since, as the defendant concedes, "it is impossible to know [from the present record] whether the motion to suppress had any chance of success", and because the search which produced the evidence in question had previously been found to be legal in an unrelated prosecution (see, People v Sullivan, 103 AD2d 1035; cf., People v Howard, 152 AD2d 325). The defendant failed to demonstrate "the absence of strategic or other legitimate explanations for counsel's failure to request a [suppression] hearing" (People v Rivera, 71 NY2d 705, 709). Similarly, counsel's failure to make a motion to sever the eighth count of the indictment charging the defendant with the robbery of a pharmacist cannot be considered ineffective, where it is far from self-evident that such a motion would have been granted (see, CPL 200.20 [2] [b]; People v Johnson, 48 NY2d 925).

As to the defendant's numerous remaining contentions, the only one which warrants discussion is his claim that the sentence imposed was illegal. The defendant was adjudicated a second felony offender (Penal Law § 70.06) and, as a result, was subject to an enhanced sentence with respect to his conviction of attempted murder in the second degree, a class B violent felony (Penal Law § 125.25 [1]; §§ 110.00, 70.06 [3] [b]; [4]; § 70.02 [1] [a]).[5] The predicate felony statement furnished by the prosecution designated a 1967 manslaughter conviction as the prior felony offense (see, Penal Law § 70.06 [1] [b]; [1] [b] [i]). However, it failed to include the information necessary in order to ascertain whether, as a result of the tolling provisions of Penal Law § 70.06 (1) (b) (v), the 1967 conviction could properly serve as a predicate for a second felony offender adjudication. The defendant now contends that the omission of this statutorily required information renders the sentence imposed illegal (CPL 400.21 [2]; People v Love, 71 NY2d 711).

---

**5.** The defendant's sentence for the four counts of murder in the second degree, a class A-I felony (Penal Law § 125.25 [1], [2]; § 70.00 [2] [a]; [3] [a] [i]) and the two counts of robbery in the first degree, a class B armed violent felony (Penal Law § 160.15 [4]; § 70.02 [1] [a]; CPL 1.20 [41]) were not necessarily affected by his adjudication as a second felony offender.

■ The People argue that any error of law with respect to the defendant's contention has not been preserved for appellate review because the defendant did not controvert the predicate felony statement. This argument is buttressed by a series of cases in which it has been held that errors affecting the legality of a sentence, however fundamental *(see, People v Udzinski,* 146 AD2d 245, 249-252), with certain narrow exceptions, are subject to the doctrine of preservation *(see, e.g., People v Ruz,* 70 NY2d 942, 943 [claim that sentence violated US Const, art I, § 10, cl (1), unpreserved]; *People v Ingram,* 67 NY2d 897 [claim that sentence violated US Const 8th Amend, unpreserved]; *People v Oliver,* 63 NY2d 973 [claim that procedure for determining persistent felony offender status is unconstitutional, unpreserved]; *People v McGowen,* 42 NY2d 905 [claim that sentence was illegal because of failure to comply with CPL 720.20 (1), unpreserved]). The defendant contends, however, that the right to be sentenced in accordance with law is so basic as to be reviewable as a matter of law even in the absence of an objection *(see, e.g., People v David,* 65 NY2d 809; *People v Morse,* 62 NY2d 205, 214, n 2; *People v Fuller,* 57 NY2d 152; *People v Craig,* 295 NY 116, 120; *People v Bradner,* 107 NY 1, 4-5).

In *People v Smith* (73 NY2d 961), the Court of Appeals case most nearly on point, it was held that the defendant had failed to preserve the argument that his adjudication as a second felony offender was illegal because the prior felony relied upon by the sentencing court (kidnapping in violation of 18 USC § 1201) did not constitute a predicate felony within the meaning of Penal Law § 70.06 (1) (b). The *Smith* case conforms the validity of several more recent cases of this court which hold that such defects may not be reviewed as issues of law in the absence of an objection *(e.g., People v Morales,* 143 AD2d 949, 950; *People v Tantau,* 143 AD2d 954; *People v Alston,* 134 AD2d 433, 435; *cf., People v Gadson,* 143 AD2d 360; *People v Abreu,* 114 AD2d 853, 854), and apparently overrules earlier precedents which had held that such defects must be reviewed as issues of law, even in the absence of an objection *(see, e.g., People v Santiago,* 129 AD2d 411; *People v Robinson,* 115 AD2d 1012, 1013; *People v Love,* 111 AD2d 134; *People v Williams,* 100 AD2d 760).

The essential purpose of the predicate felony statement has been served when the prosecution has identified the prior conviction upon which it will rely in seeking a second felony offender adjudication *(see generally, People v Bouyea,* 64 NY2d

1140; *People v Morse, supra; People v Harris,* 61 NY2d 9, 20; *People v Jackson,* 151 AD2d 781 [strict compliance with provisions of CPL regarding prior felony statements is unnecessary]; *cf., People v Rembert,* 153 AD2d 959). Once the predicate felony conviction has been identified, the defendant is fully able to assert whatever reason he might have for believing that such conviction may not be used to enhance his sentence. When the defendant fails to raise an objection, and when, as a result, the legality of the sentence cannot be determined by this court upon the information contained in the appellate record, review as a matter of law should be denied *(see also, People v Blackwell,* 151 AD2d 686; *People v Davis,* 135 AD2d 1088; *People v Banks,* 117 AD2d 611; *cf., People v Leemont,* 154 AD2d 277; *People v Tilman,* 114 AD2d 799 [issue reviewed in the interest of justice]).[6]

■ The defendant also argues that resentencing is necessary because the minutes of the sentence proceedings do not specifically indicate that he was present when, near the conclusion of the proceedings, and after what was at most a brief recess, the court pronounced that the sentence imposed was to run consecutively to an undischarged sentence which had previously been imposed by another court. However, the defendant offers no proof in order to overcome the presumption that he was in fact present *(see generally, People v Rodriguez,* 154 AD2d 488; *People v Davis,* 151 AD2d 596; *People v Marchese,* 140 AD2d 547; *People v Sharlow,* 116 AD2d 603).

The defendant's argument addressed to the discretionary or "interest of justice" jurisdiction of this court is ill founded, and no reduction of the sentence is warranted. Many of the defendant's remaining arguments, including his complaint about having been compelled to wear leg irons in order to secure the safety of those in his vicinity, are identical to those we rejected in *People v Tedesco* (143 AD2d 155, *supra).* In any event, none of them warrants reversal.

Accordingly, the judgment is affirmed.

---

6. As the People note, our decision in this respect is consistent with the determination implicit in *People v Graybosch* (138 AD2d 515). Contrary to the People's suggestion, our subsequent decision in *People v Graybosch* (139 AD2d 664), which did not pass on this preservation issue, is not inconsistent. The decision of the Appellate Division, First Department, in *People v Todd* (88 AD2d 886), which is apparently contrary to our decision herein, is disapproved.

BROWN, J. (concurring in result only). With respect to the defendant's claim of ineffective assistance of counsel, I agree only that the conduct complained of in this case was, in the absence of any proof to the contrary, part of the employment of an unsuccessful trial strategy, and as such is insufficient to support such claim *(see, People v Baldi,* 54 NY2d 137, 151). I neither adopt the sweeping language of the majority in reaching that conclusion nor do I find it necessary to reach the issue of whether this court should place its imprimatur on the prejudice test of *Strickland v Washington* (466 US 668; *see, People v Benn,* 68 NY2d 941, 942).

I do, however, concur with the majority's determination with respect to the sentencing issues raised by the defendant.

LAWRENCE and KOOPER, JJ., concur with BRACKEN, J. P.; BROWN, J., concurs in result only in a separate opinion.

Ordered that the judgment is affirmed.