OPINION OF THE COURT
Ronald Aiello, J.
The defendant moves, pursuant to CPL 440.10, for an order vacating the judgment of conviction and for such other relief as this court deems just and proper.
On December 18, 1982, at approximately 7:15 p.m., the defendant shot Howard Rosenberg six times at close range, inside of his home at 927 East 87th Street in Brooklyn. After leaving his home, the victim made his way out to East 87th Street. Shortly thereafter, the victim made an excited utterance to a paramedic by the name of Thomas Schmelk, identifying the defendant as his assailant. Rosenberg said that he had been shot by "Jimmy from Jack LaLanne.” When Schmelk asked if Rosenberg knew "Jimmy’s” last name, Rosenberg said he did not, but that his brother knew it. The victim died later that night as a result of his wounds.
For these acts, defendant was indicted for murder in the second degree and criminal possession of a weapon in the second degree under indictment number 2904/83.
A hearing was held by this court on November 19 and 20, 1984 to determine the admissibility of statements made by the deceased after he had been shot and prior to his demise. After *208 hearing testimony and arguments by both sides, this court held, in a memorandum decision, that the deceased’s statements to the paramedic and to two police officers were admissible under the excited utterance exception to the hearsay evidence rule.
The defendant was convicted, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree and sentenced by this court to a term of imprisonment. At sentencing, defendant made a pro se motion, pursuant to CPL 400.30 and 330.30, to vacate the judgment of conviction and to set aside the verdict on the grounds that he had received ineffective assistance of counsel at trial and that a spectator’s outburst at trial had prejudiced his case. After hearing arguments, this court denied defendant’s motion.[1]
The defendant appealed his conviction to the Appellate Division, Second Department. Defendant’s points on appeal were as follows: (a) that the prosecution failed to prove his guilt beyond a reasonable doubt; (b) that statements admitted at trial as excited utterances were improperly admitted; and (c) that the charge to the jury was improper.
The defendant’s conviction was unanimously affirmed by the Appellate Division, Second Department. (People v Vigilante, 122 AD2d 900.) By memorandum decision that court upheld this court’s ruling concerning the admissibility of Rosenberg’s excited utterances to Schmelk, the paramedic.
On November 17, 1986, defendant’s application for leave to appeal to the Court of Appeals was denied. (People v Vigilante, 68 NY2d 1005 [Titone, J.].)
On January 29, 1986, defendant filed a motion before this court, pursuant to CPL 440.10, 440.20 and 440.30 to vacate the judgment of conviction and to set aside the sentence. In that motion, defendant asserted that he was denied effective assistance of trial counsel, that he had been denied a fair trial because of a spectator outburst and that he had been denied effective assistance of counsel at sentence. By decision and order of the court dated March 25, 1986, defendant’s motion to vacate the judgment was denied.
On April 29, 1986, defendant sought leave to appeal to the Appellate Division from this court’s March 25, 1986 memorandum decision and order, denying his motion to vacate judgment pursuant to CPL 440.10, 440.20 and 440.30. On July 11, *209 1986, defendant’s application for leave to appeal this court’s order was denied. (People v Vigilante, 2d Dept, July 11, 1986, Eiber, J. [mot No. 3916].)
By motion dated October 25, 1988, defendant sought an order of the Appellate Division, pursuant to Judiciary Law § 509 (a), directing the Commissioner of Jurors to disclose to defense counsel, certain confidential information about the trial jurors to defense counsel. This motion was denied. (People v Vigilante, 2d Dept, Dec. 1, 1988 [mot No. 8327].) On April 6, 1989 the Court of Appeals dismissed defendant’s appeal to that court on the ground that the order appealed from does not finally determine an action or proceeding within the meaning of the Constitution. On May 26, 1989, the Appellate Division denied defendant’s motion for leave to appeal to the Court of Appeals from the Appellate Division’s denial of his motion.
On July 6, 1990 filed a petition for a writ of habeas corpus with the Federal District Court for the Eastern District of New York. The grounds raised were: (1) that there was insufficient admissible and credible evidence to establish defendant’s guilt beyond a reasonable doubt; (2) that the admission of testimony of the excited utterance deprived defendant of his Federal constitutional rights to confrontation, cross-examinatian, due process of law, and a fair trial; (3) that the alleged courtroom outburst by the mother of the deceased deprived defendant of a fundamentally fair trial and due process of law; and (4) that defendant received ineffective assistance of trial counsel before, during and after his trial. Judge Korman heard argument on the case on February 8, 1991. On February 20, 1991 Judge Korman, at defendant’s request, ordered the case closed for administrative purposes so defendant could exhaust his State remedies for the Federal claims, and stated that the case would be reopened upon request of defendant after he presents these claims to the State courts.
On September 19, 1991, defendant filed the present motion with this court. Defendant claims that his judgment of conviction should be vacated based on claims 2, 3 and 4 of the petition for habeas corpus (above).
EXCITED UTTERANCE
Firstly, it is to be noted that defendant’s claim that Rosenberg’s excited utterance should not have been admitted into evidence is procedurally barred. This court must deny a *210 motion to vacate a judgment when, although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred, owing to the defendant’s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. (CPL 440.10 [2] [c].)
Defendant did raise an excited utterance claim in his direct appeal to the Appellate Division. However, defendant’s first two grounds in the instant motion for challenging the admissibility of the excited utterance — that the excited utterance exception to the hearsay rule, particularly its New York version, is recent vintage, and of too broad an application to establish its reliability, and that the excited utterance exception is, per se, too unreliable to allow the admission of any testimony thereunder[2] were never presented to the Appellate Division or any other State court. Accordingly, this branch of defendant’s motion is denied.
In any event, defendant’s claim that admission into evidence of the deceased’s statements to the paramedic and the police officers violated defendant’s right to confrontation is meritless. Excited utterance is a well-recognized exception to the hearsay rule. (Ohio v Roberts, 448 US 56; People v Nieves, 67 NY2d 125, 135; People v Brown, 70 NY2d 513; People v Edwards, 47 NY2d 493, 497; People v Marks, 6 NY2d 67, 71-72, cert denied 362 US 912; People v Vigilante, 122 AD2d 900, supra; People v Smith, 170 AD2d 548 [2d Dept 1991]; Fed Rules Evid, rule 803 [2]; 6 Wigmore, Evidence § 1747.)
Accordingly, there is no merit to the defendant’s claim that the admission of the hearsay statement violated his right to confrontation.
THE SPECTATOR OUTBURST
Defendant claims that at his trial, at the conclusion of the testimony of the deceased’s brother, the mother of the deceased jumped up from the spectator’s section, pointed at the defendant and shouted: “that man killed my son!”
The defendant argues that this courtroom outburst by the mother of the deceased, deprived defendant of a fundamentally fair trial and due process of law.
*211 As previously noted by this court’s memorandum decision and order dated March 25, 1986, the record belies defendant’s claim.
The record indicates that a spectator said, "Your Honor, this is a mistrial.” Thereafter, this court had the person who caused the disturbance removed from the courtroom. The record further indicates that this court then asked if any of the jurors had heard anything. After all the jurors indicated that they had not, this court admonished the jury to disregard the outburst. (Memorandum decision and order, at 5-6.)
The official court reporter reexamined his notes and attests to the accuracy of the transcription of the record. The court notes that both defendant and his mother, Mary Vigilante, have submitted affidavits that it was the deceased’s mother who made this outburst. Defendant also submits affidavit of Anthony Cosmo who served as an alternate juror at the defendant’s trial. This affidavit dated July 21, 1988, states in substance, that during the trial, a woman spectator made an outburst to the effect of "that man killed my son. I know all the jury heard what she said. The judge had the woman removed and called a recess for the jury.”
It is presumed that the jurors followed instructions. Before sentencing, this court considered defendant’s claim that he had been prejudiced and rejected same.
Due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that not the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the Trial Judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.” (Smith v Phillips, 455 US 209, 217.) In sum, this branch of defendant’s motion is denied.
Defendant was not deprived of a fair trial and defendant suffered no prejudice as a result of the courtroom outburst.
INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant alleges that he received ineffective assistance of counsel. Defendant submits an affidavit dated December 17, *212 1989 from his trial counsel Jay Dennis Cohen and an affidavit dated December 26, 1989 from a private investigator by the name of August A. Stahl.[3]
Mr. Cohen alleges that he was retained to represent the defendant on the above charges in May 1983 shortly after the defendant’s arrest. On May 30, 1984, his mother suffered a heart attack and was hospitalized; on July 2, 1984 his father suffered a heart attack and died; shortly thereafter his mother underwent triple bypass surgery and remained in the hospital until October 1984,[4] when she was moved to Florida.
In his affidavit, Mr. Cohen states that he tried to do his best to prepare for and try the case against the defendant; however, "I now realize, with the benefit of hindsight, a number of things that could have been done to prepare a better defense.” He states, in his affidavit, that he now realizes that he should have hired an investigator, that an investigator may have been able to obtain additional information on many matters; as examples, Mr. Cohen states that one of the crucial issues in this case was the admissibility of an excited utterance made by the deceased to the paramedic (Schmelk); central to an attack on the admission of this statement was an attempt to show that the paramedic lied when he said that a part of this statement was that the deceased said his "brother knew” who "Jimmy, from Jack LaLanne” (the alleged shooter) was; "the paramedic was somewhat impeached by a showing that the remark about the deceased’s brother was not in the report of this incident; however, because the paramedic was not interviewed by myself or an investigator, it was not discovered that he believed Mr. Vigilante was a gangster from the neighborhood. Had this information been known prior to trial, the statement might have been excluded altogether; at the least, the credibility of the paramedic would have been seriously undermined at the trial.” Mr. Cohen also states that another crucial defense was that there were other "Jimmys” who might have killed the deceased. One of the police reports *213 stated that during an interview with one Gary Perlson, Perl-son said that on Friday, December 17, 1982 (the date before the shooting), the deceased told him he recently sold 100 Qualudes to a "Jimmy” and that Jimmy was coming to his apartment the following day to buy 1,000 Qualudes; since the deceased’s brother had testified that since Mr. Vigilante only purchased 15 Qualudes and was not going to be sold any more by the deceased, Perlson’s testimony may have helped establish the existence of another "Jimmy” who was supposed to be buying a large amount of drugs from the deceased at the time he was shot. Mr. Cohen further states that since another police report stated that Mr. Walls (the landlord of the deceased) told the police that "People seemed to come and go as if they had a key to the apartment and the downstairs door,” Walls should have been called to establish that numerous people had unrestricted entry to the deceased’s apartment. However, Mr. Cohen did not interview or call Walls. Cohen further states that a few months prior to the death of deceased, Walls heard a very loud argument between the deceased and his girlfriend, one Lynn Ferrara, over Ferrara’s possible pregnancy, after which Ferrara left Rosenberg; however, because of his (Cohen’s) preoccupation with his family’s problems, he did not realize that the information might have formed the basis for an argument that yet additional persons had other reasons for killing the deceased, and he never tried to locate Ferrara. Cohen also states that he erred in that he should have called one Richard Koffler, who told the police that on the night the deceased was shot he called the deceased’s apartment at about 7:55 p.m. and was told by an "unknown male voice” that the deceased could not come to the phone because at the time, "I did not realize the significance of this report — because the deceased had been shot shortly beforehand, the speaker must have been involved in or aware of the shooting; had I realized that, I would have arranged for Mr. Koffler to hear my client’s voice and testify that it was not the voice he had heard.” Finally, Mr. Cohen states that during the trial, the mother of the deceased made an outburst in the courtroom during the testimony of her surviving son and although he did not hear the precise words she cried out, he did not object or move for a mistrial because he thought the case was going favorably; "in view of the eventual conviction, my belief at the time was unjustified and an objection and motion for a mistrial should have been made.”
*214 It appears to this court that trial counsel is merely speculating that had he made different decisions in preparing and trying defendant’s case, the verdict might have been different. However, this cannot be the basis for an ineffective assistance of trial counsel claim. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” (Strickland v Washington, 466 US 668, 689.) As was well said in People v Baldi (54 NY2d 137, 146), "It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy.” This is no less true even though counsel is saying it about himself, viewing his past performance through the rosy prism of hindsight analysis.
Therefore, trial counsel’s hindsight observations of what he could have done differently, had he not had family concerns, do not make out either a conflict of interest situation or a per se ineffective assistance of trial counsel. Therefore, defendant must show that he suffered actual prejudice from his trial counsel’s representation.
Second, in order to succeed on a claim that trial counsel was ineffective, defendant must demonstrate that "counsel’s representation fell below an objective standard of reasonableness”, and that "there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different” (Strickland v Washington, 466 US, supra, at 688, 694; Mills v Scully, 826 F2d 1192, 1197 [2d Cir 1987] [adopting Strickland’s two-pronged test, the defendant has failed to meet his burden in establishing either of these two elements in this case]). It has been consistently held that in cases involving a claim of deprivation of the right to effective assistance of counsel, that reversal is not warranted unless the defense counsel’s alleged ineptitude had a probable effect on the outcome of the trial. (See, People v Margan, 157 AD2d 64; People v Sullivan, 153 AD2d 223.) Defendant has not met this burden.
Defendant also faults trial counsel for failing to call certain alibi witnesses. Although defendant’s trial counsel did not give Assistant District Attorney Linda Starr an affidavit to include in her response to defendant’s previous motion made pursuant to CPL 440.10, he did tell Assistant District Attorney Starr, in a telephone conversation, that it was his strategy to focus on the circumstantial nature of the evidence implicating defen *215 dant.[5] Trial counsel further stated to Assistant District Attorney Starr that he chose not to emphasize defendant’s alleged alibi witnesses because, in his opinion, defendant’s girlfriend (Fran Tobias) and his mother, Mary Vigilante, would not have presented very credible witnesses. He also stated that the testimony of defendant’s girlfriend was potentially quite damaging for the defendant because she would have placed defendant near both the Jack LaLanne Health Spa and the scene of the murder.[6]
Counsel’s ultimate decision to not present defendant’s alibi witnesses reflects the existence of a trial strategy that might well have been pursued by a reasonably competent attorney. (See, People v Holmes, 36 AD2d 782.) "It is not for this court to second-guess whether a course chosen by defense counsel was the best strategy, or even a good one, as long as defendant was provided meaningful representation.” (People v Satterfield, 66 NY2d 796, 799-800, supra; People v Ghee, 153 AD2d 954.) Calling these witnesses to testify may have appeared self-serving and might have caused the jury to focus its attention on a defense that seemed contrived as opposed to possible weaknesses in the People’s case. Moreover, if defendant was not content with counsel’s actions, he could have easily made a record at trial. (People v Holmes, 36 AD2d 782, supra [defendant failed to complain at trial that counsel failed to call witnesses and in any event, that decision was one of trial tactics and afforded no basis for postconviction relief].)
In determining whether an attorney acted reasonably, judicial scrutiny of counsel’s performance must be "highly deferential.” A defense attorney is "strongly presumed” to have rendered adequate and effective assistance to a defendant and to have made all significant decisions in the exercise of reasonable professional judgment; the court should not second-guess defense counsel’s trial strategy. (Strickland v Washington, 466 US, supra, at 689-690; United States v Cronic, 466 US 648, 658; see also, People v Reilly, 128 AD2d 649, 650.)
*216 It is well settled that the courts must look to the totality of the evidence, the law and the circumstances of a particular case in determining whether a defendant has been provided with effective assistance of counsel. (See, People v Satterfield, 66 NY2d 796, supra.) The most critical concern in reviewing claims of ineffective counsel is to avoid confusing true ineffectiveness with mere losing tactics and according greater significance to retrospective analysis. (See, People v Baldi, 54 NY2d 137, 141.) Guided by these standards, this court concludes that the defendant has failed to establish that his trial counsel provided him with less than meaningful representation. (See, People v Rivera, 71 NY2d 705; People v Benn, 68 NY2d 941; see also, People v Sanchez, 148 AD2d 760.)
Trial counsel was retained counsel of defendant’s own choosing, pretrial motions were made on defendant’s behalf. The People’s witnesses were vigorously and effectively cross-examined by defense counsel, consistent with his strategy of focusing on the circumstantial nature of the People’s case. In addition, defense counsel successfully impeached the paramedic, Thomas Schmelk, with the fact that the second part of the statement, that deceased’s brother knew "Jimmy from Jack LaLanne”, was not on the police reports. Trial counsel made intelligent arguments concerning the court’s ruling on the admissibility of the deceased’s statements at trial under the "excited utterance” exception to the hearsay rule. Also, defense counsel presented legally sound opening and closing arguments. The record amply demonstrates that defense counsel’s performance was objectively reasonable under prevailing professional norms. What clearly emerges from this record is that the defendant was represented by an attorney who was "familiar with, and able to employ at trial basic principles of criminal law and procedure”. (People v Droz, 39 NY2d 457, 462.) This simply is not "another of those rare cases * * * in which the representation of a defendant by his assigned lawyer was so inadequate and ineffective as to deprive him of a fair trial.” (People v Bennett, 29 NY2d 462, 464; cf., People v Daley, 172 AD2d 619 [2d Dept, Apr. 8, 1991] [defendant denied effective assistance of counsel when, during the course of the trial, defense counsel demonstrated his lack of familiarity with relevant criminal law, failed to read Grand Jury testimony of a key witness, was "wholly inadequate” in cross-examining the prosecution’s chief witness, the undercover officer who was the only witness able to connect him to the crime and when during summation, defense counsel neglected to address any of the incriminating evidence which had been *217 presented and failed to focus on any of the critical issues raised at trial. While courts will not second-guess on trial strategy, in this case there appears to be an absence of strategy]; People v Butler, 94 AD2d 726 [defendant denied effective assistance of counsel, where counsel was admittedly ignorant of the applicable criminal law, did not make any motions during the trial, failed to cross-examine the arresting officer, did not obtain police reports and was unprepared for trial].)
Accordingly, defendant’s motion to vacate judgment on the grounds of ineffective assistance of counsel is denied.
INEFFECTIVE ASSISTANCE OF COUNSEL AT THE MOTION TO SET ASIDE THE VERDICT AND AT SENTENCE
Defendant received effective assistance of counsel at the motion to set aside the verdict and at sentence. Defendant elected to proceed pro se on his motion to set aside the verdict. Since defendant asked this court to decide his motion on the sentencing date, even though he was alleging that his trial counsel was ineffective, he obviously cannot now complain that he was deprived of counsel on that motion.
As to ineffective assistance of counsel at sentencing, the fact that defense counsel added nothing to defendant’s plea for leniency is not indicative of ineffective assistance of counsel at sentence. There may simply have been nothing more to say. This court, after listening to both the prosecutor, trial counsel and the defendant, carefully outlined its reasons for imposing a 20-year to life sentence.[7]
Brevity of remarks by trial counsel at sentence is not indicia of ineffective assistance of counsel. (People v Williams, 97 AD2d 599.) Defense counsel accurately apprised this court of the concurrent sentences defendant was then serving for crimes he was convicted of in Queens and Suffolk Counties and successfully argued for a concurrent sentence in this case. (See, memorandum decision and order of this court dated Mar. 25, 1986, at 6.)
Accordingly, defendant’s claim of ineffective assistance of trial counsel at the motion to set aside the verdict and at sentence is denied.

. Sentence minutes of December 18,1984.

. Page 8 of defendant’s memorandum of law.

. Defendant submits as exhibit B an affirmation from Mr. August A. Stahl who states that he is a licensed private investigator who was retained by the family of James Vigilante. On July 21, 1986 he interviewed Mr. Thomas Schmelk, who was the paramedic who attended Jeffrey Rosenberg after he was shot on December 18, 1982 and who testified for the court. "Mr. Schmelk admitted to me that he knew Mr. Vigilante before this incident and said 'he is a bad person and he is a gangster.’ ”

. The trial itself began on November 16, 1984 with a hearing on the admissibility of an excited utterance.

. In People v Satterfield (66 NY2d 796, 798), both the People and defendant’s attorney submitted affidavits relating to telephone conversations they had with trial counsel.

. As previously noted in this court’s memorandum decision dated March 25, 1986, the place where Fran Tobias and the defendant were allegedly having dinner on the night and time of the murder is directly across the street from the Jack LaLanne Health Spa where defendant and deceased allegedly first met and only a few short blocks from the scene of the homicide.

. It is also to be noted that the maximum sentence in this matter is 25 years to life.